## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 17 2016, 8:26 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Donald E. Wertheimer
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Alan S. Townsend
Nathan T. Danielson
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RYYZ, LLC; RYYZ 2, Corp.; and Joseph Jusewitz,

*Appellants / Cross-Claim Appellees / Defendants,*

v.

Fannie Mae,

*Appellee / Cross-Claim Appellant / Plaintiff.*

February 17, 2016

Court of Appeals Case No. 45A03-1504-MF-131

Appeal from the Lake Superior Court

The Honorable Michael N. Pagano, Special Judge

Trial Court Cause No. 45D09-1308-MF-1

**Bradford, Judge.**

## Case Summary

In September of 2012, Appellee/Cross-Claim Appellant/Plaintiff Fannie Mae initiated a foreclosure action against Appellants/Cross-Claim Appellees/Defendants RYYZ, LLC; RYYZ 2, Corp.; and Joseph Jusewitz (collectively, "Appellants") in connection with two commercial real estate loans. As a part of the foreclosure action, Fannie Mae sought a money judgment and decree of foreclosure relating to an apartment complex located in Gary, commonly known as Westbrook Apartments (the "Apartment Complex"), which served as collateral for the loans. During the course of the underlying proceedings, Appellants caused numerous delays and committed numerous discovery violations. As an eventual sanction for Appellants' numerous discovery violations, on February 5, 2015, the trial court issued an order of default in favor of Fannie Mae.

Appellants appeal the trial court's order granting a default judgment in favor of Fannie Mae arguing that, while it may have been appropriate to impose sanctions against them in light of their admitted numerous discovery violations, the trial court nonetheless abused its discretion in imposing the "ultimate sanction" rather than other potential lesser sanctions. We affirm the judgment of the trial court.

# Facts and Procedural History

# I. The Appellants, Loans, and Loan Documents

## A. The Appellants

Jusewitz owns 95% of the ownership of RYYZ, LLC (the "LLC") and RYYZ 2, Corporation (the "Corporation"). Jusewitz resides in New York. He also appears to maintain a residence in Israel. Nediva Schwarz serves as Jusewitz's secretary, the managing member of the LLC, and a principal of both the LLC and the Corporation.

## B. The Loans and Loan Documents

The commercial loans at issue (the "Loans") are secured by the Apartment Complex and guaranteed by Jusewitz. The Loans are cross-defaulted, with a breach under any of the loan documents executed in connection with the Loans (collectively, the "Loan Documents") constituting a beach under all other Loan Documents.

### 1. The Phase I Loan and Associated Loan Documents

On March 19, 2007, the LLC executed and delivered to Arbor Commercial Funding, LLC ("Arbor") a promissory note in the original amount of $10,500,000.00 (the "Phase I Note"). Also on March 19, 2007, to secure its obligations associated with the Phase I Note, the LLC executed and delivered a mortgage, assignment of rents, and security agreement ("Phase I Mortgage") on the portion of the Apartment Complex commonly known as Westbrook Apartments Phase I, which includes 356 rental units and all associated property (collectively, the "Phase I Mortgaged Property"). The Phase I Mortgage was

recorded in the Lake County Recorder's Office and the liens associated with the Phase I Mortgaged Property were perfected via the filing and recording of various financing statements. To further secure its obligations under the Phase I Note, the LLC also executed a replacement reserve and security agreement with Arbor (the "Phase I Replacement Reserve Agreement"). An "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" ("Key Principal Agreement") was also executed by Jusewitz and attached to the Phase I Loan. Pursuant to the Key Principal Agreement, Jusewitz is personally liable for all amounts for which the LLC is personally liable under the Phase I Note. The Phase I Loan and Loan Documents were assigned by Arbor to Fannie Mae on March 19, 2007.

### 2. The Phase II Loan and Associated Loan Documents

[6] On January 2, 2009, the Corporation executed and delivered to Arbor a promissory note in the original amount of $3,005,800.00 (the "Phase II Note"). Also on January 2, 2009, to secure its obligations associated with the Phase II Note, the Corporation executed and delivered a mortgage, assignment of rents, and security agreement ("Phase II Mortgage") on the portion of the Apartment Complex commonly known as Westbrook Apartments Phase II, which includes 140 rental units and all associated property (collectively, the "Phase II Mortgaged Property"). The Phase II Mortgage was recorded in the Lake County Recorder's Office and the liens associated with the Phase II Mortgaged Property were perfected via the filing and recording of various financing statements. To further secure its obligations under the Phase II Note, the

Corporation executed a replacement reserve and security agreement with Arbor (the "Phase II Replacement Reserve Agreement"). Jusewitz and the LLC also each executed an absolute, unconditional, and irrevocable personal guaranty, pursuant to which they each guaranteed the payment of the Phase II Note. Jusewitz's guaranty was executed by Jusewitz, personally (the "Jusewitz Guaranty"), and the LLC's personal guaranty was executed by Jusewitz as the LLC's "Sole Member." Appellee's App. p. 354. The Phase II Loan and the Loan Documents were assigned by Arbor to Fannie Mae on January 2, 2009.

### 3. Collateral Mortgage

In order to further secure the obligations due and owing under the Loan Documents, the LLC executed and delivered a second mortgage on the Phase I Mortgaged Property (the "Collateral Mortgage). The Collateral Mortgage was executed by Jusewitz as "Member" of the LLC. Appellee's App. p. 359. The Collateral Mortgage was recorded in the Lake County Recorder's Office and it secures the indebtedness due under both the Phase I and Phase II Notes.

### 4. Jusewitz's Financial Reporting Requirements Under the Jusewitz Guaranty

Sections seventeen and eighteen of the Jusewitz Guaranty impose the following financial reporting requirements on Jusewitz:

> 17.    [Jusewitz] shall furnish to Lender within 45 days after the end of each fiscal quarter of the Borrower (i) a statement signed by [Jusewitz] disclosing all real estate holdings located in the United States of America owned by [Jusewitz], and (ii) copies of [Jusewitz's] most recent bank and brokerage account statements which verify the amount of Liquid Assets in accounts maintained

in the United States financial institutions.

> 18. [Jusewitz] covenants and agrees to maintain at all times during the Loan term (i) Net Worth of not less than US$5,000,000.00 in real estate holdings located in the United States of America and (ii) a minimum of US$500,000.00 in Liquid Assets in accounts maintained in United States financial institutions.

Appellee's App. p. 347. The Jusewitz Guaranty defined the terms "Net Worth" and "Liquid Assets" and indicated that "[f]ailure of [Jusewitz] to comply with the terms and conditions of Sections 17 and 18 above shall and may be deemed by the Lender to be a default under the Loan Documents." Appellee's App. pp. 347-48.

[9] Over a fourteen-month period between January of 2010 and March of 2011, Arbor, which maintained custodial duties relating to the Loans and Loan Documents, made five separate requests for updated personal financial statements from Jusewitz. No statements were provided until April of 2011 and November of 2011. Neither the April nor the November statement reflected the liquid assets required by the Jusewitz Guaranty. A March 21, 2012 bank statement for Jusewitz's personal bank account indicated an account balance of $500,122.00. However, an April 1, 2012 bank statement provided for the same account showed $0.00 in liquid assets.

## II.  The 2010 Fire, Payment Issues, and Mechanic's Liens

### A.  The 2010 Fire

[10]  On May 22, 2010, a fire affecting four apartment units occurred at the Apartment Complex.  The fire was first reported to Arbor, via telephone call, on July 6, 2010.  During the July 6, 2010 telephone call, Arbor explained the procedures and requirements under the Loan Documents effective in the event of a fire.  The matters discussed during the July 6, 2010 telephone call were reiterated in email correspondence delivered by Arbor to the Appellants' representatives.

[11]  On December 28, 2010, insurance proceeds associated with the fire (the "Fire Proceeds") were received by Arbor.  The next day, on December 29, 2010, Arbor placed those funds into an interest-bearing insurance escrow account.  In emails dated January 5, February 14, August 31, September 1, and September 16, 2011, Arbor informed the Appellants of various requirements under the Loan Documents relating to the fire loss and the distribution of the Fire Proceeds, including actions that must be taken by the Appellants.  In these emails, Arbor also warned the Appellants that they were not currently complying with the requirements of the Loan Documents in connection with their handling of the fire loss.

[12]  In February and April of 2011, Arbor conducted telephone conferences with Schwarz, during which a number of the requirements necessary for release of the Fire Proceeds to the Appellants were explained.  During these

conversations, Arbor clarified that the Appellants' perceived failures to comply with the requirements of the Loan Documents, including Jusewitz's failure to provide financial information as required by the Jusewitz Guaranty, had to be resolved before the Fire Proceeds could be distributed. These conversations were confirmed in a series of emails from Arbor to Schwarz dated between February 24, 2011 and April 28, 2011.

[13]   Arbor subsequently determined that the repairs necessary to complete the fire restoration would cost approximately $106,000.00, which exceeded the amount of Fire Proceeds received by Arbor. In August of 2011, Arbor informed the Appellants that co-payable checks could be arranged to pay a third-party contractor for the restoration if the restoration work was completed in a manner consistent with the requirements of the Loan Documents. The Appellants, however, never completed any restoration work. As a result, the Fire Proceeds were never distributed.[1]

## B.  Payment Issues

[14]   Payments on the Phase I Loan were delinquent and paid after their due dates for all months between October of 2011 and March of 2012. Payments on the Phase II Loan were delinquent and paid after their due dates for the months of

---

[1]  Fannie Mae's judgment provides a credit to the Appellants for the portion of the Fire Proceeds remaining in the insurance escrow account, plus interest, less a small payment that was made to an insurance adjuster.

October and December of 2011 and February of 2012. No monthly payments were made on either Loan after July of 2012.

## C. Mechanic's Liens

In the spring of 2012, mechanic's liens totaling approximately $29,500.00 were filed against the Phase I Mortgaged Property (the "Liens"). Fannie Mae demanded that the LLC and Jusewitz take the necessary steps to have the Liens released, but the Liens were never released. The holders of the Liens were named as defendants in the Amended Complaint, and a judgment foreclosing and barring any interests of these parties was entered on October 22, 2013.

# III. The Parties' Pre-Trial Actions and the Trial Court's Default Order

## A. Initiation of Lawsuit and Fannie Mae's Motion for Summary Judgment

On September 26, 2012, Fannie Mae filed its complaint, seeking to foreclose on the mortgages. Fannie Mae sought leave to file an amended complaint to modify the relief sought because of the Liens that had been filed against the property but not released. The trial court granted Fannie Mae's request, and on June 4, 2013, Fannie Mae filed its amended complaint. The amended complaint added a count seeking personal liability against Jusewitz under certain provisions of the Phase I Loan Documents.

On November 15, 2013, Fannie Mae filed a motion for summary judgment, supporting designation of evidence, and memorandum. After numerous delays,

Appellants filed their response to Fannie Mae's motion and supporting documentation on January 31, 2014. Also on January 31, 2014, Appellants filed a counterclaim against Fannie Mae. On May 12, 2014, the trial court conducted a hearing on Fannie Mae's motion. Following the hearing, the trial court issued an order indicating that in light of issues raised in Appellants' counter-claim, the issues presented in Fannie Mae's summary judgment motion needed to be re-briefed.

[18] Pursuant to the trial court's order, Fannie Mae filed a second motion for summary judgment, supporting designation of evidence, and memorandum on June 13, 2014. Appellants filed a response to Fannie Mae's motion on July 18, 2014. Following a September 29, 2014 hearing, the trial court issued an order denying Fannie Mae's second motion for summary judgment.

## B. Issues Relating to Discovery

[19] After denying Fannie Mae's motion for summary judgment, the trial court issued a scheduling order in which it set a discovery deadline of December 19, 2014. The trial court's order indicated that with respect to discovery, "[n]o extensions will be permitted without court approval." Appellee's App. p. 950. The trial court also issued the following warning to the parties: "And gentlemen, I will sanction if there's what I consider obstreperous or inappropriate delays in scheduling [depositions] and the like. And that sanction could include the ultimate one, so be warned." 9/29/2014 Tr. p. 45.

The parties subsequently filed an agreed request for an extension to complete discovery because Appellants had not yet completed their written discovery responses or made Schwarz or Jusewitz available for depositions. The trial court granted the parties' joint request, ordering "that all discovery in this matter *shall* be completed by no later than January 16, 2015." Appellee's App. p. 956 (emphasis added).

### *1. Written Discovery*

Fannie Mae served requests for the production of certain documents, interrogatories, and requests for admissions on the Appellants on October 14, 2014 and October 20, 2014. Fannie Mae's written discovery requests included requests for materials relating to Appellants' counterclaim, the Apartment Complex, the fire, the accounts associated with the Replacement Reserve Agreements, and all relevant correspondence between Appellants and Arbor or Fannie Mae. In a December 29, 2014 email correspondence between counsel for Appellants and counsel for Fannie Mae, Appellants' counsel indicated that the Appellants would provide their responses to Fannie Mae's written discovery requests on or before December 31, 2014, but may not be able to provide any responsive documents until January 13, 2015, the date set for the depositions of Schwarz and Jusewitz.

On December 31, 2014, Appellants served their respective written responses to Fannie Mae's requests for admissions and interrogatories. Fannie Mae's interrogatories to Jusewitz included requests that Judewitz identify all accounts, real estate, and entities in which he owns or owned an interest. Jusewitz's

response to each of these interrogatories was "[t]his answer will be provided." Appellee's App. pp. 1011-02. Jusewitz never provided any supplemental responses to these interrogatories. Appellants did not provide any responses to Fannie Mae's request for the production of documents on December 31, 2014, and the only responsive documents Fannie Mae ever received consisted of two pages which were handed to counsel for Fannie Mae by Schwarz during her deposition.

## *2. Depositions*

Fannie Mae first attempted to schedule depositions for Jusewitz and Schwarz on October 20, 2014. In written correspondence dated November 24, December 8, December 11, December 18, and December 22, 2014, counsel for Fannie Mae again requested deposition dates for Jusewitz and Schwarz. On December 22, 2014, counsel for Fannie Mae notified Appellants' counsel that because no deposition dates had been offered, Fannie Mae intended to take the depositions of Jusewitz and Schwarz on January 13, 2015, at Appellants' counsel's office. Notices of these depositions were delivered on December 23, 2014. In emails dated December 26, 2014 and January 8, 2015, counsel for Fannie Mae attempted to confirm that Jusewitz and Schwarz would be made available for depositions on January 13, 2015. Appellants' counsel eventually confirmed that Schwarz would be available, but indicated that he was uncertain whether Jusewitz would be available.

Counsel for Fannie Mae took Schwarz's deposition on January 13, 2015. Immediately prior to Schwarz's deposition, Appellants' counsel provided

Fannie Mae's counsel with a handwritten note which was purported to be written by Jusewitz's doctor in Israel. This note indicated that Jusewitz had a "common cold" and would not be available for a deposition on January 13, 2015, as he could not fly to the United States between January 11 and January 15, 2015. Appellee's App. p. 1023. The note did not indicate why Jusewitz had been unable to travel to the United States for a deposition prior to January 11, 2015. At the conclusion of Schwarz's deposition, counsel for Fannie Mae again inquired as to when Jusewitz would be available for a deposition.

In email and telephone correspondence with Appellants' counsel on January 16 and January 19, 2015, counsel for Fannie Mae again requested deposition dates for Jusewitz. No dates were provided at this time. In email correspondence dated January 19, 2015, counsel for Fannie Mae indicated that if Jusewitz would not make himself available for a deposition on January 22, 2015, Fannie Mae would be forced to seek assistance or relief from the trial court. On January 20, 2015, Appellants' counsel informed counsel for Fannie Mae via email that Jusewitz would not be available for a deposition on January 22, 2015. Jusewitz failed to make himself available for a depositions despite at least ten requests from Fannie Mae's counsel over a period of more than thirteen weeks.

# C.  Fannie Mae's Request for Sanctions and the Trial Court's Default Order

[26]   Pursuant to the scheduling order issued by the trial court, Fannie Mae filed its witness list, exhibit list, and contentions on January 19, 2015.  Appellants never filed a witness list, exhibit list, or any contentions.

[27]   On January 22, 2015, Fannie Mae filed a verified motion seeking sanctions for Appellants' numerous discovery violations (the "Sanctions Motion").  Fannie Mae also requested a telephonic conference for the purpose of discussing scheduling issues, outstanding discovery issues, and the Sanctions Motion.

[28]   On January 23, 2015, the trial court conducted a telephonic hearing on the Sanctions Motion.  Counsel for both parties appeared by telephone and were given the opportunity to present argument regarding the allegations made in the Sanctions Motion.  Counsel for Appellants did not contest the allegations made in the Sanctions Motion during the hearing.  At the conclusion of the hearing, the trial court granted the Sanctions Motion.  Specifically, the trial court stated the following:

> Well, gentlemen, I have rarely seen a case that has been the result of a defendant stonewalling quite as bad as this one.  Um, I believe, uh, Fannie Mae lays it out fairly well in their brief - - or in their motion toward the end where they summarize the difficulties, uh, regarding foot-dragging and stonewalling.  That is exactly the way I am gonna characterize it.
>
> And in [this] rare instance, given the totality of the circumstances of this case, I am going to grant the ultimate sanction of default. And I am going to dismiss with prejudice the Counterclaim.

1/23/2015 Tr. pp. 10-11. The trial court then entered an order (the "Sanctions Order"), in which it found that in light of the largely-uncontested allegations contained in the Sanctions Motion, dismissal of Appellants' Counterclaim and the entry of default judgment in favor of Fannie Mae on all claims was appropriate. The Sanctions Order vacated the scheduled trial date and instructed Fannie Mae to tender a proposed entry of judgment, supported by affidavits and consistent with the Sanctions Order, within fourteen days.

[29] On February 5, 2015, Fannie Mae filed a proposed judgment and supporting affidavits. On February 5, 2015, the trial court entered judgment in favor of Fannie Mae; a decree of foreclosure; and a dismissal, with prejudice, of Appellants' counterclaim.

[30] On March 6, 2015, Appellants' filed a motion to correct error. This motion was not supported by affidavit or verified statements. On March 9, 2015, Appellants filed a supplemental submission of Jusewitz and additional purported medical records. The trial court denied Appellants' motion to correct error on March 10, 2015. This appeal follows.

# Discussion and Decision

[31] Appellants contend that the trial court abused its discretion in entering default judgment in favor of Fannie Mae as a sanction for Appellants' admitted discovery violations.

# I. Standard of Review

[32] Trial Rule 37(B)(2)(c) provides that one of the appropriate sanctions for failure to comply with a discovery order is "rendering a judgment by default against the disobedient party." The Indiana Supreme Court has held that appellate courts "assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion." *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012) (citing *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175 (Ind. 1993)). This is in large part because "[t]rial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation." *Id.* "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *McCullough*, 605 N.E.2d at 180 (citing *Myers v. Myers*, 560 N.E.2d 39, 42 (Ind. 1990)).

[33] As such, when faced with a challenge to a sanction imposed by a trial court, we review the trial court's sanction only for an abuse of its discretion. *Whitaker*, 960 N.E.2d at 115.

> An abuse of discretion occurs when the trial court's decision is against the logic and natural inferences to be drawn from the facts of the case. [*Smith v. Smith*, 854 N.E.2d 1, 4 (Ind. Ct. App. 2006)]. Because of the fact-sensitive nature of discovery issues, a trial court's ruling is given a strong presumption of correctness. *Id.* "Absent clear error and resulting prejudice, the trial court's

determinations with respect to violations and sanctions should
not be overturned." *Id*. at 4-5.

*Peters v. Perry*, 877 N.E.2d 498, 499 (Ind. Ct. App. 2007).

# II.  Analysis

Fannie Mae argues that Appellants have waived their appellate challenge to the alleged error because Appellants have failed to present cogent argument supported by citation to relevant authority and portions of the record in support of their contention.  Fannie Mae additionally argues that Appellants have waived their appellate challenge to the alleged error because Appellants' brief contains numerous violations of the Appellate Rules[2] which, combined with their failure to provide cogent argument, substantially impedes our review of the issue presented on appeal.  We agree.

Indiana Appellate Rule 46(A)(8)(a) provides that the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record

---

[2]  In addition to alleging that Appellants failed to present cogent arguments supported by citation to relevant authority and portions of the record, Fannie Mae alleges that Appellants' statement of facts is largely devoid of any citation to the record, is not set forth in narrative form, and is "rife with argument."  Appellee's Br. p. 13.  Fannie Mae also alleges that Appellants' summary of the argument is filled with allegations which contradict and go beyond the record and that Appellants improperly utilize a footnote citation method which contravenes Indiana's Appellate Rules.  After reviewing Appellants' brief, we find these allegations to be true.

on Appeal relied on[.]" An appellant's failure to comply with Appellate Rule 46(A)(8)(a) results in waiver of the appellant's claim on appeal. *See generally, Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind. Ct. App. 1999) (providing that we will not consider a claimant's assertions on appeal where the claimant has not presented a cogent argument supported by legal authority and references to the record as required by the rules). While we generally prefer to decide cases on the merits rather than on technicalities, we will deem alleged errors waived where an appellant's noncompliance with the Indiana Appellate Rules is so substantial that it impedes our consideration of said alleged errors. *See Nehi Beverage Co., Inc. of Indpls. v. Petri*, 537 N.E.2d 78, 81 (Ind. Ct. App. 1989). Further, because appellants bear the burden of demonstrating error, we will not sift through a record to locate any potential error so as to state an appellant's case for him. *Id*.

[36] In arguing that the trial court abused its discretion in entering default judgment for Fannie Mae, Appellants do not claim on appeal that they should not have been sanctioned for their failure to comply with the discovery rules as they acknowledge that they have committed various discovery violations. Appellants merely make the bald assertion that the trial court should have imposed a lesser sanction against them. In making this assertion, however, Appellants fail to cite to any relevant authority or evidence in the record which would support their position. Further, although Appellants' brief also contains the bald assertions that the trial court "did not gather all relevant information before making its decision" and should not have found Jusewitz's claim of poor

health to be suspect, *see* Appellant's Br. p. 9, Appellants' brief contains no explanation as to what relevant information the trial court should have gathered before making its decision or citation to any evidence suggesting that Jusewitz's alleged poor health legitimately prevented his ability to travel or appear for a deposition.

[37] Our review of Appellants' brief reveals that Appellants have not presented a cogent argument supported by legal authority and references to the record in support of their claim as is required by Appellate Rule 46(A)(8)(a). As it is not our place to do so, we will not comb through the record in an attempt to make Appellants' case for them. *See Petri*, 537 N.E.2d at 81. We therefore conclude that Appellants have waived their appellate challenge to the propriety of the trial court's award of default judgment for Fannie Mae.[3] Further, because we

---

[3] Appellants also assert that default judgment was inappropriate because their counsel (1) was allegedly misled by counsel for Fannie Mae and (2) was asked to comment on a document which he had not been afforded an opportunity to review. However, we note that Appellants not only fail to provide citation to relevant authority or relevant portions of the record in support of these assertions in their appellate brief, but also that review of the record reveals that these claims were not even presented before the trial court. With respect to Appellants' claim that their counsel was misled by Fannie Mae's counsel, review of the record reveals that Appellants' counsel never indicated at any point during the proceedings that he felt that he had been misled by Fannie Mae's counsel. With respect to the assertion that Appellants' counsel was asked to comment on a document he had not been afforded an opportunity to review, the record indicates that the document in question was provided to Appellants' counsel the day before the hearing and counsel explicitly stated during the hearing in which the document was discussed that he was familiar with its contents and was prepared to address the allegations set forth therein. The fact that Appellants failed to raise either of these assertions below provides an additional reason why these assertions may not be presented on appeal. *See Pitman*, 717 N.E.2d at 633 (providing that when an issue is not presented before the trial court, appellate review of that issue is waived).

reach this conclusion, we need not consider the alternative counter-claim arguments presented by Fannie Mae.

[38] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.