ATTORNEY FOR APPELLANT
Kevin L. Likes
Auburn, Indiana

ATTORNEYS FOR APPELLEE
Jane E. Malloy
William A. Ramsey
Fort Wayne, Indiana



FILED
Jan 18 2012, 12:08 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 02S03-1201-CT-27

RICKEY D. WHITAKER,

*Appellant (Plaintiff below),*

v.

TRAVIS M. BECKER,

*Appellee (Defendant below).*

Appeal from the Allen Circuit Court, No. 02C01-0812-CT-40
The Honorable Thomas J. Felts, Judge
The Honorable Craig J. Bobay, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-1006-CT-303

**January 18, 2012**

**Shepard, Chief Justice.**

After an automobile collision in which Travis Becker struck Rickey Whitaker from behind, Whitaker filed suit for personal injuries.

Over the next year, Whitaker's lawyer ignored repeated requests to provide information about his client's medical treatment, finally responded only after the trial court ordered him to do so, and then supplied false and misleading information, and did so in a way that palpably

damaged the defendant's ability to ascertain the facts necessary to litigate the only real issue in the case.

Becker filed a motion for sanctions, seeking dismissal of Whitaker's suit. The trial court found that both Whitaker and his lawyer had acted in bad faith and concluded that dismissal was the only realistic and effective remedy. It dismissed the case. We affirm.

**Facts and Procedural History**

On December 19, 2008, Rickey D. Whitaker filed suit against Travis M. Becker and Roger R. Becker, seeking to recover damages for personal injuries. Whitaker alleged that on December 21, 2006, Travis was driving Roger's vehicle negligently, and that Travis crashed into Whitaker's vehicle from behind as a result. The trial court later dismissed Roger from the suit on March 24, 2009, leaving Travis as the sole defendant.

On January 19, 2009, Becker's counsel sent Whitaker's counsel a set of interrogatories and a request for production of documents. Becker's counsel indicated that Indiana Trial Rule 33 required Whitaker to answer by February 23, 2009.[1] Whitaker's counsel neither responded nor requested an extension of time to respond.

Three separate times, on April 14, April 29, and May 12, 2009, Becker's counsel wrote to Whitaker's lawyer, reminding him that his responses were overdue. (Appellant's App. at 71–

---

[1] As Whitaker's counsel noted, Indiana Trial Rule 33 grants a party thirty days to respond to a discovery request. Because Trial Rule 6(E) provides for an additional three days when a party serves a discovery request by regular mail, and Trial Rule 6(A) further delays a deadline for responding until the following business day when the deadline falls on a weekend or legal holiday, Whitaker's counsel had more than the standard thirty days either to respond or to request an extension.

73.) The third letter, by citing Indiana Trial Rule 26(F), implicitly warned Whitaker's lawyer that Becker would involve the trial court if Whitaker did not respond.[2] (See Appellant's App. at 73.) Whitaker's lawyer did not respond to any of these three letters.

On May 27, 2009, Becker filed a motion to compel discovery. The trial court granted the motion on June 1, 2009, ordering Whitaker's counsel to respond to Becker's discovery requests by June 16, 2009. Consistent with the rest of the picture, Whitaker's counsel has recharacterized this order as "an extension." (Appellant's Br. at 4.)

On June 15, 2009, the day before the trial court's deadline, Whitaker's counsel finally served Whitaker's sworn responses, the following of which later proved inaccurate and misleading:

> Interrogatory No. 45: Has any doctor or any other person assigned a disability rating to you as a result of the injuries received in said accident? . . .
>
> Answer: not yet [sic] – surgery can't be done because of no insurance coverage. Have to pay up front for surgery.
>
> * * *
>
> Interrogatory No. 48: Are you presently being treated by any doctor or medical practitioner for any injury, complaint, symptom or ailment that you are claiming was caused by the accident in question? . . .
>
> Answer: Dr. McGee not treated recently – waiting for money for surgery. Can't take treatment any further with lack of insurance.
>
> * * *

---

[2] Indiana Trial Rule 26(F) requires a party to make a reasonable effort to resolve a discovery dispute informally before moving for an order to compel discovery or a protective order.

Interrogatory No. 49: Will such treatment be continued in the future? . . .

Answer: Not sure. If it would resume it would be with Dr. McGee, at this time not sure of what he would want to do.

\* \* \*

Interrogatory No. 52: Itemize all of the medical expenses, hospital expenses, wages lost, and any other special damages which you are claiming to have incurred as a result of the injuries alleged to have been received in said accident in question, which have not been set forth in the previous answers to these Interrogatories.

Answer: Enclosed Special Damages Brochure. For medical bills to date.

(Appellant's App. at 96–99.) Both Whitaker and his lawyer signed the responses. (Appellant's App. at 106.) The trial court later found as fact that Whitaker knew these answers were false when his lawyer filed them. (Appellant's App. at 15–16.)

Three days later, on June 18th, Whitaker's lawyer mailed Becker's counsel a letter disclosing the fact that Whitaker was undergoing cervical fusion surgery on his spine on—of all days—June 18th.

It was later revealed that concrete preparations for surgery had been underway for several weeks, even as Whitaker and his lawyer were declaring in writing that "surgery can't be done" due to lack of funds.

Dr. Alan W. McGee of Orthopaedics Northeast had issued surgery orders for Whitaker on April 14, 2009; Whitaker had undergone pre-operative testing on June 1, 2009, and a pre-operative physical examination on June 12, 2009. (Appellant's App. at 112–24.) All these disclosures specifically contradicted Whitaker's responses to Interrogatory Nos. 45, 48, and 49. Moreover, Whitaker's Special Damages Brochure did not include any expenses for those services until Whitaker's counsel supplemented it on September 15, 2009, despite his sworn

4

representation that the Special Damages Brochure was up to date as of June 15, 2009. (Appellant's App. at 107–08, 123–24.)

Becker's counsel eventually filed a motion for sanctions, to which Whitaker's lawyer also failed to respond. (Appellant's App. at 52–70.) The trial court held a hearing on January 21, 2010. In considering Becker's request for outright dismissal, the court explicitly inquired into whether lesser sanctions like excluding evidence of the surgery might be adequate. (Tr. at 21–25.) Becker's counsel argued that the surgery seriously undermined the value of a post-operative examination in helping to establish whether the accident or Whitaker's preexisting degenerative disc disease caused his bulging disc condition because the surgery would have removed part of the disc. (Tr. at 21–25.)

After considering the range of possible sanctions available under Indiana Trial Rule 37, the court noted the centrality of the need to resolve whether Whitaker's surgery was prompted by his preexisting degenerative disc disease or by the automobile collision. (Appellant's App. at 13–14.) It found that Whitaker's actions in depriving Becker of the chance for an independent medical examination constituted "significant and material prejudice." (Appellant's App. at 14.) The court further found that "[t]he loss of this evidence [could not] justly be cured by a sanction less severe than dismissal of this cause." (Appellant's App. at 15.) The court granted the motion, finding that Whitaker and his counsel had supplied "deceptive interrogatory answers" and had done so "in bad faith." (Appellant's App. at 16.)

Perhaps now grasping the gravity of the situation, Whitaker's lawyer filed a motion to correct error and, for the first time, attached multiple exhibits not previously before the court. (Appellant's App. at 125–45.) Whitaker argued that Becker could still request a post-operative examination and that he in effect provided notice of Whitaker's need for surgery by submitting

5

claims to Becker's insurance claim representative during 2008.[3] (Appellant's App. at 125–28.) He also claimed and that Becker's counsel could have received notice of Whitaker's need for surgery had she pursued a nonparty request.[4] (Appellant's App. 125–28.) The trial court denied the motion.

On appeal, the Court of Appeals reversed, reinstating Whitaker's case and finding that requiring him to pay $625 of Becker's attorneys' fees was an adequate sanction. Whitaker v. Becker, 946 N.E.2d 51 (Ind. Ct. App. 2011).

We grant transfer, thereby vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

**Standard of Review**

We assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion. McCullough v. Archbold Ladder Co., 605 N.E.2d 175 (Ind. 1993). Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect

---

[3] The exhibits pertinent to this point included three letters from late 2008 to a claims representative at Westfield Insurance. (Appellant's App. at 133–36.) The gist of these letters was that surgery had been recommended but was not in the offing because Whitaker had no health insurance or other means to pay. (Appellant's App. at 133–36.) How Whitaker's surgery in June 2009 came to be paid for is not clear from the record.

[4] Becker's lawyer had, in fact, served Whitaker's counsel on January 19, 2009, with a proposed nonparty request she intended to serve on multiple medical providers and a body shop. (Appellant's App. at 137.) Indiana Trial Rule 34(C) requires a lawyer to give an opposing party at least fifteen days' notice before serving a request on a nonparty. Whitaker's counsel never responded to this notice. It is understandable that the trial court did not see this sequence of events as shifting responsibility from Whitaker and his lawyer to the opposing party.

6

the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation. We therefore review a trial court's sanction only for an abuse of its discretion. Id. at 180–81.


### Outright Dismissal for Misleading Responses That Make a Full Defense Impossible


The purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery. Chustak v. Northern Ind. Pub. Serv. Co., 259 Ind. 390, 288 N.E.2d 149 (1972). Although "concealment and gamesmanship were [once] accepted as part and parcel of the adversarial process," we have unanimously declared that such tactics no longer have any place in our system of justice. Outback Steakhouse of Florida, Inc. v. Markley, 856 N.E.2d 65, 77 (Ind. 2006) (quoting Harvey v. Horan, 285 F.3d 298, 317–18 (4th Cir. 2002)). Today, "the purpose of pretrial discovery is to 'make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" Id. (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958)).


In service of that goal, Indiana Trial Rule 37(B)(2)(c) expressly provides that a trial court may impose sanctions, including outright dismissal of the case or default judgment, if a party fails to comply with an order to compel discovery. As the U.S. Supreme Court has explained, the purpose of sanctioning discovery violations is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).


Whitaker argues that the trial court abused its discretion here because the court's order was "primarily founded" on the finding that Whitaker's actions prevented Becker from obtaining a valid independent medical examination, which Whitaker claims is not so. (Appellant's Br. at 9.) Moreover, Whitaker argues that he did not conceal his surgery from Becker and that Becker suffered no prejudice in any event. (Appellant's Br. at 14–17.) Finally, Whitaker argues that he

did give Becker notice of his need for surgery because he notified a claims representative for Becker's insurance company. (Appellant's Br. at 17–19.)

In response, Becker argues that the trial court acted appropriately because the uncontroverted evidence shows that Whitaker violated a court order by submitting false and misleading answers to Becker's interrogatories, answers to which were already long overdue. (Appellee's Br. at 8–12.) Moreover, Becker argues, the trial court found that these responses materially prejudiced Becker's defense, a finding the trial court did not necessarily need to make to warrant dismissal, but one that clearly supports it. (Appellee's Br. at 12–16.) Finally, Becker argues that while Whitaker waived any argument that Whitaker gave notice to Becker through a claims representative for his insurance company, this notice really constituted no notice at all in any event. (Appellee's Br. at 16–21.)

This state's case law confirms the notion that under the appropriate facts a trial court may enter an outright dismissal or default judgment when a party failed to respond to discovery requests on time, the trial court granted an order to compel discovery, and the party violated the order to compel by failing to respond. See, e.g., Peters v. Perry, 877 N.E.2d 498 (Ind. Ct. App. 2007); see also Pfaffenberger v. Jackson Cty. Reg'l Sewer Dist., 785 N.E.2d 1180 (Ind. Ct. App. 2003); Wozniak v. Northern Ind. Pub. Serv. Co., 620 N.E.2d 33 (Ind. Ct. App. 1993), trans. denied; Mulroe v. Angerman, 492 N.E.2d 1077 (Ind. Ct. App. 1986).

A court may sometimes do likewise when a delinquent party did respond but did so in an incomplete or misleading way. See, e.g., Prime Mortg. USA, Inc. v. Nichols, 885 N.E.2d 628 (Ind. Ct. App. 2008) (forged document and refusals to produce others); see also Mallard's Pointe Condominium Ass'n, Inc. v. L&L Investors Group, LLC, 859 N.E.2d 360 (Ind. Ct. App. 2006) (appearing at deposition without documents under subpoena duces tecum), trans. denied; Ross v. Bachkurinskiy, 770 N.E.2d 389 (Ind. Ct. App. 2002) (responding to only one of four sets of interrogatories); Castillo v. Ruggiero, 562 N.E.2d 446 (Ind. Ct. App. 1990) (responding with reference to allegations in complaint and by claiming information unavailable without showing why), trans. denied. Although the regular practice is to fashion progressive sanctions leading up

to a dismissal or default judgment when it is possible to do so, imposing intermediate sanctions is not obligatory when a party's behavior is particularly egregious. Prime Mortgage, 885 N.E.2d at 649.

In Prime Mortgage, for example, a shareholder filed suit against her corporation's co-owner, alleging that they each owned fifty percent of the corporation and that it was deadlocked, and seeking a dissolution. Id. at 637–38. The co-owner missed his first deadline for producing corporate records, the trial court had granted the shareholder's motion to compel, and the co-owner still refused to produce twenty-two of twenty-seven requested documents. Id. at 647. The only documents the co-owner produced were ones to which the plaintiff already had access. Id. The co-owner later violated a second order to compel in much the same way. Id. at 647–48.

Of particular interest, however, when the co-owner first answered the shareholder's complaint, he produced a forged shareholder's agreement under which he claimed he had sold shares to his daughter and an employee. Id. at 637, 650. As a result, the co-owner claimed, the shareholder did not own fifty percent of the corporation, so the corporation was not deadlocked and no dissolution was necessary. See id. at 637. On the shareholder's motion for sanctions, the trial court entered a default judgment, and the Court of Appeals affirmed. Id. at 638, 652. The Court of Appeals found that forging the shareholder's signature on the agreement went to the heart of the case and forced the shareholder to change the theory on which she proceeded. Id. at 651.

Here, Whitaker's counsel failed to respond to discovery requests on time, the trial court issued an order to compel discovery,[5] and Whitaker responded in a false and misleading way.

---

[5] Whitaker's only debate with these facts is that the trial court's order to compel discovery was nothing more than an extension of time. (Appellant's Br. at 4.) According to Whitaker, the court's order "just set the date for Whitaker's responses." (Appellant's Br. at 18.) This is flatly not the case. The court's order did not "just" set the date for Whitaker's responses; the Indiana Trial Rules did that. The court's order

Whitaker's counsel did not respond to Becker's interrogatories within the time limits set out in the Indiana Trial Rules. Whitaker's counsel ignored three separate reminder letters from Becker's counsel reminding him his responses were overdue, prompting the order to compel discovery under Trial Rule 37(A). Whitaker's counsel violated the court's order to compel by providing false and misleading answers that expressly denied any future plans for Whitaker to undergo future medical treatment when, in fact, Whitaker had already scheduled a surgery to have a disc removed and vertebrae in his spine fused.

Although Whitaker has characterized the court's order as being "primarily founded" on the finding that Whitaker's actions prevented Becker from obtaining a valid independent medical examination, it is clear that the court viewed this concern as an aggravating circumstance on top of and in addition to Whitaker's misleading violation of the court's order. We think an experienced trial judge could easily conclude that a surgery to remove a disc and fuse two vertebrae together would generate evidentiary problems for a defendant trying to prove that the plaintiff's need for surgery really resulted from a preexisting condition—a degenerative disc disease.

Finally, it is little answer to say, as Whitaker does, that his dishonest act of saying in writing that no surgery was in the offing precisely at the moment surgery preparation was occurring should be discounted by his having told Becker's insurance company's claims representative seven months earlier that surgery was recommended but not yet planned.

---

essentially gave Whitaker one last chance before opening the door to all manner of unpleasant sanctions under Indiana Trial Rule 37(B).

## Conclusion

Magistrate Bobay and Judge Felts acted within the range of their discretion in making it clear to counsel that this type of behavior is unacceptable. We affirm the trial court.

Dickson and David, JJ., concur.
Sullivan, J., dissents, believing the analysis and conclusion of the Court of Appeals in this case to have been correct.
Rucker, J., dissents.