## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2018, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Bedolla, <br> *Appellant-Petitioner*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent*. | August 31, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1712-PC-3004 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Amy Barbar, Magistrate <br><br> Trial Court Cause No. <br> 49G02-0903-PC-34210 |

**Brown, Judge.**

[1] Anthony Bedolla appeals the post-conviction court's denial of his October 20, 2017 motion. Bedolla raises one issue which we revise and restate as whether the post-conviction court abused its discretion when it did not sanction a federal prisoner who refused to answer questions during a deposition without an attorney present. We affirm.

### Facts and Procedural History

[2] The relevant facts as discussed in Bedolla's direct appeal follow:

> In the early morning hours of March 8, 2009, Jose Reyes and his girlfriend, Sarai Solano, were at the El Rey De Copas club in Indianapolis. Solano had worked as a paid confidential informant for the police in other cases. Solano saw Erick Espinoza arguing with Bedolla in the club and saw Bedolla push Espinoza. Solano had known Bedolla for about a month, and she knew what Espinoza looked like. Near the 3:00 a.m. closing time, Reyes and Solano were leaving the club and walking toward their vehicle when Solano saw Espinoza walking through the parking lot. She also saw Bedolla in the parking lot with a gun and heard Bedolla shouting at Espinoza that Espinoza owed money to him. Bedolla then shot Espinoza. With Espinoza lying on the ground, Bedolla threw money at Espinoza's feet and said that he did not need the money.
>
> Reyes also knew Bedolla. Reyes saw Bedolla in the parking lot with a gun and saw him shoot the gun, but he could not see what Bedolla was shooting at. Reyes heard three shots and saw Bedolla get in his vehicle and leave after the shooting.
>
> Espinoza died from his wounds, and police officers recovered money near Espinoza's body. When the police arrested Bedolla two weeks later at the El Rey De Copas club, he had cocaine in his possession. The State charged Bedolla with murder and possession of cocaine as a Class D felony. Bedolla filed a motion

to attend Solano and Reyes's depositions. Bedolla argued that he should be allowed to attend based on his right of confrontation and because he could assist his attorney with Spanish translations. The trial court denied Bedolla's request but noted that, if Solano or Reyes failed to appear at the trial, their depositions would not be admissible. Solano and Reyes both testified at Bedolla's bench trial in February 2010. Gerardo Baca Ramirez testified that he followed Espinoza into the parking lot, saw Espinoza talking to a man, who was not Bedolla, saw the man pull out a gun, and heard shots. The trial court found Solano and Reyes more credible than Ramirez and found Bedolla guilty as charged. The trial court sentenced Bedolla to forty-five years in the Department of Correction.

*Bedolla v. State*, No. 49A02-1003-CR-368, slip op. at 1-3 (Ind. Ct. App. January 20, 2011), *trans. denied*.

[3]     On direct appeal, Bedolla argued that the denial of his request to attend the depositions of two witnesses violated his confrontation rights or his right to assist in his defense and that the evidence was insufficient to sustain his conviction. *Id.* at 2. This Court affirmed. *Id.* at 6.

[4]     On October 3, 2011, Bedolla filed a petition for post-conviction relief alleging ineffective assistance of trial and appellate counsel. On September 21, 2016, and January 10, 2017, Bedolla amended the petition. On January 11, 2017, the court held an evidentiary hearing and scheduled another hearing for April 26, 2017.

[5]     On April 10, 2017, Bedolla filed a third amendment to his petition for post-conviction relief alleging newly discovered evidence. Specifically, he stated:

The parties . . . appeared for . . . the evidentiary hearing on January 11, 2017. After the hearing, the Court ordered Bedolla returned to the prison where he is housed . . . . While Bedolla was awaiting transport, deputies placed him in a holding cell with another prisoner. That prisoner was Miguel [Barragan-Lopez], who was awaiting resolution of an unrelated case of his own. [Barragan-Lopez] and Bedolla conversed, and [Barragan-Lopez] told Bedolla that he knew the conviction was unjust and wrongful. Upon returning to the prison, Bedolla wrote to his attorneys and asked them to please meet with [Barragan-Lopez] and see exactly what information [Barragan-Lopez] had that could help the case. Counsel conferred with both [Barragan-Lopez] and his attorney, Brent Westereld.

[Barragan-Lopez] says he knew one of the State's witnesses, Sarai Solano ("Solano"). Solano is the witness whose testimony the public defenders challenged at Bedolla's bench trial and in the direct appeal. Solano and [Barragan-Lopez] became acquainted when they met at a nightclub, El Parral located on the Westside of Indianapolis. This was after Bedolla's trial. They had a short-term casual relationship and met or went to a nearby hotel on four occasions. Solano confided to [Barragan-Lopez] that Bedolla did not murder Erick Espinoza. Solano told [Barragan-Lopez] her then-boyfriend, Jose Reyes, was the real killer and that she knows Bedolla is innocent.

Appellant's Appendix Volume II at 141-142. He also alleged that this newly discovered evidence met the nine criteria for a new trial including that the evidence is not merely impeaching because "Solano recanted when she confided in" Barragan-Lopez, and that the evidence would likely produce a different result because "the case hinged upon the credibility of the witnesses." *Id.* at 143.

[6]     On April 26, 2017, the court held an evidentiary hearing, and continued the hearing to July 28, 2017. On May 2, 2017, Bedolla filed a motion for Writ of Habeas Corpus Ad Testificandum, which requested that the court secure the attendance of Barragan-Lopez from the Grayson County Jail in Kentucky at the July 28, 2017 hearing. The court denied the motion as well as Bedolla's motion to reconsider. On July 28, 2017, the court held an evidentiary hearing.

[7]     Bedolla filed a Motion for Leave to Depose Witness and Request to Serve Deposition Subpoena with respect to Barragan-Lopez. On August 18, 2017, the court granted the motion and ordered the parties to work together to schedule a satisfactory time to conduct the deposition.

[8]     On September 13, 2017, Barragan-Lopez was deposed in the Grayson County Detention Center in Kentucky. Through an interpreter, Barragan-Lopez testified that he had received a copy of the court's August 18th order; that he understood it was a court order telling him to give his testimony; that he was in a holding cell with Bedolla on January 11, 2017; and that he spoke with Bedolla that day about the murder at El Rey de Copas. The prosecutor objected on the basis of leading questions. Barragan-Lopez asked why his attorney was not present at the deposition, and Bedolla's counsel stated that Barragan-Lopez was "under a court subpoena as a witness in this case." Appellant's Appendix Volume III at 72. Bedolla's counsel asked Barragan-Lopez, "And you told my client that you didn't think that . . . ." *Id.* The prosecutor objected based upon the leading questions and asserted that the questions were inappropriate for a trial deposition. Barragan-Lopez stated, "If they're not appropriate, then I want

to leave." *Id.* Bedolla's counsel told Barragan-Lopez, "And for the record the only thing that the prosecutor can object to is form. He cannot give you advice. He's not your attorney." *Id.* Barragan-Lopez stated that he did not "want to be [present] because it's going to get me involved in something that I'm going to get in trouble for" and "I can help him, but I don't want to get in trouble." *Id.* at 73. After some discussion, Bedolla's counsel stated that she was going to need to ask for a ruling from the court "as when adverse witness and asking the leading questions for that reason." *Id.* at 76. Barragan-Lopez stated that he wanted to leave and, when told by Bedolla's counsel that he was under a court order to give testimony, he stated: "Yes. But if it's not an attorney here, if there's not an attorney here that can explain this to me, I'm not going to be doing this." *Id.* at 77. After further discussion, the prosecutor stated:

> Again at this point, I'm becoming uncomfortable with this. The witness has said repeatedly that he does not, that he told you and he has said repeatedly that he's not going to be here without his lawyer representing him. And that he says he has a lawyer.

> I think it is highly inappropriate to go forward when you have a witness who said that he has told you that he wants an attorney here. He has stated on the record today that he wants his attorney here. And he's not represented by a lawyer.

*Id.* at 78-79. Barragan-Lopez stated: "I would like the prosecutor to know that I don't have any problems giving testimony. But I would like my attorney to be present." *Id.* at 80. Barragan-Lopez later stated that "if you come back with my attorney, I will answer all of the questions you have." *Id.* at 82. Bedolla's counsel stated that Barragan-Lopez left the room without permission, that she

called Barragan-Lopez's attorney who was unavailable to participate in the matter, and that the deposition was suspended.

[9] On September 20, 2017, the court held a status conference. The prosecutor objected to any further depositions of Barragan-Lopez. Bedolla's counsel stated that she previously went down and talked to Barragan-Lopez and he refused to go on the record without a court order prior to obtaining the subpoena. When questioned by the court, Bedolla's counsel indicated that she may not have notified Barragan-Lopez's attorney of the notice of the deposition for September 13th. The prosecutor indicated that Barragan-Lopez's attorney did not technically represent him on any pending case and that he did not think the court had the power to appoint an attorney for a witness. The court stated that it was going to show the evidence as closed and ordered the parties to submit proposed findings of fact and conclusions of law on or before November 8th. Bedolla's counsel asked to make an offer of proof, and the court indicated that this was a quasi-civil matter, that she had multiple opportunities to obtain Barragan-Lopez's testimony, and that the evidence was closed.

[10] On October 20, 2017, Bedolla filed a motion arguing in part that the court refused to allow him to make an offer of proof, refused to hear an argument concerning the right to move for sanctions against Barragan-Lopez, and that the deposing party has the right under Trial Rule 37 to request sanctions if the

deponent refuses to cooperate.[1]  On October, 24, 2017, the court denied the motion.  On November 24, 2017, Bedolla filed a petition to certify the order for interlocutory appeal and to stay the proceedings pending the outcome which the court granted.

### *Discussion*

[11]    The issue is whether the post-conviction court abused its discretion when it did not sanction a federal prisoner who refused to answer questions during a deposition without an attorney present.  Bedolla argues that the post-conviction court abused its discretion when it did not allow him to enforce the subpoena pursuant to the Trial Rules and did not allow him to pursue sanctions against Barragan-Lopez.

[12]    The State argues that Bedolla's failure to request sanctions waived the issue for appellate review.  The State contends that, waiver notwithstanding, Bedolla never properly subpoenaed Barragan-Lopez pursuant to the terms of the Uniform Interstate Depositions and Discovery Act ("UIDDA") because he did not provide evidence that the subpoena was filed with or issued by the Kentucky court.  The State asserts that it would be the Kentucky court that

---

[1] Although Bedolla titled the motion "MOTION TO CORRECT ERROR," we cannot say that the motion was properly titled.  *See Stephens v. Irvin*, 730 N.E.2d 1271, 1277 (Ind. Ct. App. 2000) (treating a motion labeled a "Motion to Correct Error" filed before the entry of final judgment as a motion to reconsider), *affirmed on reh'g, trans. denied*; *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998) ("[M]otions to reconsider are properly made and ruled upon prior to the entry of final judgment" (citing Ind. Trial Rule 53.4(A)); Trial Rule 59(C) (providing that motions to correct error are to be filed "not later than thirty (30) days after the entry of a final judgment").  Appellant's Appendix Volume III at 34.

would be able to sanction Barragan-Lopez for refusing to testify had he been properly subpoenaed pursuant to the UIDDA. It also argues that the post-conviction court did not abuse its discretion in refusing to sanction Barragan-Lopez even if it were proper for an Indiana court to do so. It asserts that the alleged testimony from Barragan-Lopez would be merely impeaching and that Bedolla has also failed to demonstrate that the evidence would probably result in a different outcome or that the evidence is worthy of credit. In his reply brief, Bedolla asserts that the State failed to raise the argument regarding compliance with the UIDDA before the post-conviction court and accordingly has waived its argument.

[13] Bedolla cites Ind. Trial Rule 37(B)(1), which provides: "*Sanctions by court in county where deposition is taken.* If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the county in which the deposition is being taken, the failure may be considered a contempt of that court." The deposition was taken in Kentucky, and even if the Marion Superior Court could impose sanctions, we cannot say that reversal is warranted.

[14] Generally, we assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion. *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012). "Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future

litigation." *Id.* Accordingly, we review a trial court's sanction only for an abuse of discretion. *Id.*

[15] Bedolla asserted in his third amended petition and on appeal that Barragan-Lopez would testify that Solana told him that her boyfriend was the actual killer. Generally, new evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000) (citing *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1991)). We analyze these nine factors "with care, as '[t]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id.* (quoting *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987)). "The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief." *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006). As to the ninth prong, in determining whether newly discovered evidence would likely produce a different result at a new trial, the post-conviction court may consider the weight a reasonable trier of fact would give the evidence and may evaluate the probable impact the evidence would have in a new trial considering the facts and circumstances shown at the original trial. *Nunn v. State*, 601 N.E.2d 334, 337 (Ind. 1992). The

newly discovered evidence must raise a strong presumption a new trial would achieve a different result. *Id.*

[16] Even if Barragan-Lopez testified at a new trial, the State would have an opportunity to introduce Solano's testimony. We observe that Bedolla did not present any testimony from Solano at the post-conviction hearing. We cannot say that he demonstrated that Barragan-Lopez's testimony would not be merely impeaching. *See Taylor*, 840 N.E.2d at 330 (holding that the Court did not see how using an affidavit to show that a witness was lying at trial would not be impeachment and that the petitioner had not demonstrated that a different result would be produced at a new trial); *Coates v. State*, 534 N.E.2d 1087, 1098 (Ind. 1989) ("Furthermore, evidence that merely impeaches generally does not support a claim for a new trial based on newly discovered evidence.") (citing *Downs v. State*, 482 N.E.2d 716 (Ind. 1985)). Accordingly, we cannot say that the trial court abused its discretion.[2]

[17] For the foreging reasons, we affirm the trial court's order.[3]

---

[2] To the extent Bedolla cites *Beasley v. State*, 46 N.E.3d 1232 (Ind. 2016), that case involved Ind. Evidence Rule 804(b), which provides: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness. . . . (3) *Statement Against Interest*. A statement that . . . a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."). Unlike in *Beasley* where the statement at issue was made by an individual who was ultimately shot and killed, Bedolla has made no argument that Solano is unavailable for the purpose of Evidence Rule 804.

[3] We make no comment on the ultimate determination of whether Bedolla is entitled to post-conviction relief.

Affirmed.

Bailey, J., and Crone, J., concur.