## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 21 2019, 7:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Robert L. Burkart
Jean M. Blanton
L. Katherine Boren
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Jason M. Massaro
Indianapolis, Indiana

Robert S. Daniels
Daniels G. Kerns
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bioconvergence, LLC and Alisa K. Wright, individually,

*Appellants/Defendants-Counterclaimants,*

v.

Kathryn S. Eddy,

*Appellee/Plaintiff-Counterclaim Defendant.*

May 21, 2019

Court of Appeals Case No. 18A-PL-1351

Appeal from the Marion Superior Court

The Honorable Gary L. Miller, Judge

Trial Court Cause No. 49D03-1211-PL-45456

**Tavitas, Judge.**

# Case Summary

BioConvergence, LLC ("BioC") and Alisa K. Wright (collectively, "the Defendants") appeal the trial court's entry of default judgment in favor of Kathryn S. Eddy ("Eddy") and the trial court's dismissal with prejudice of the Defendants' counterclaim as discovery violation sanctions. We affirm in part and reverse in part.

# Issues

The Defendants raise the following issues:

> I. Whether the Defendants were denied due process when the trial court found them to be in contempt based on Eddy's unverified contempt motion.
>
> II. Whether the trial court's dismissal of Defendants' counterclaims was an unjust discovery violation sanction.
>
> III. Whether the trial court's entry of default judgment was an unjust discovery violation sanction.

# Facts[1]

This case involves a plethora of discovery disputes, violations, requests for contempt findings and sanctions, and gamesmanship that ensued after the employer-employee relationship of the parties soured. The relevant facts are as

---

[1] We heard oral argument of the parties on March 28, 2018.

follows: Wright is the majority owner and chief executive officer of BioC[2], headquartered in Bloomington, Indiana. Wright's ex-husband, Lance, was BioC's chief operating officer. In 2004, Eddy contracted to provide consulting advice to BioC and, in 2006, Eddy began serving on BioC's board of advisors.

In December 2010 or January 2011, Eddy purchased 371.429 ownership shares of BioC for $52,000.00, or $140.00 per share, the unit price that was designated by Defendants and approved by BioC's accounting firm. In March 2011, Eddy accepted a position as BioC's chief financial officer. That Fall, Defendants tasked Eddy with performing a new stock valuation. Eddy concluded that the unit price of the ownership shares should be $70.00; however, Defendants elected to maintain the $140.00 unit price. In December 2011, Eddy bought seventy-one more ownership shares at the $140.00 unit price.

In May 2012, Defendants terminated Eddy's employment, which triggered BioC's option to repurchase Eddy's ownership shares pursuant to BioC's operating agreement. In July 2012, Defendants repurchased Eddy's ownership shares for $15.50 per share.[3] On November 27, 2012, Eddy sued Defendants for actual and constructive fraud; breach of contract; breach of fiduciary duty; criminal deception; defamation per se; defense and indemnification; specific performance; violations of the Indiana Uniform Securities Act; and willful

---

[2] BioC is a service provider to the life sciences industry and provides contract services, including development, production, testing, supply chain, and consulting services, to the pharmaceutical industry.

[3] Defendants aver that BioC's accounting firm generated the $15.50 unit price pursuant to a new valuation.

misconduct and recklessness. On January 18, 2013, Defendants counterclaimed for breach of contract; conversion; criminal deception; defamation; intentional infliction of emotional distress; and negligence.

[6] The discovery disputes at issue involve Eddy's requests (1) for an executed medical release from Wright for mental health records from the Wrights' marriage counselor, Carol Bither; and (2) for non-party production of documents from Defendants' expert witness, Gary Kleinrichert of FTI.

[7] On May 12, 2015, Eddy filed motions for orders to release Wright's mental health records and to compel production of mental health records. Eddy argued that Wright "placed her mental health at issue [ ] by claiming [ ]severe emotional distress and mental anxiety"; and "any such records are crucial to Eddy's defense of Wright's Counterclaims[.]" Appellants' App. Vol. V pp. 28, 30. On July 30, 2015, the trial court ordered Wright to execute any necessary medical release forms within ten days. Wright failed to execute the release that Eddy's counsel provided.

[8] On September 9, 2015, Eddy served a nonparty request for production of documents upon Bither and successfully obtained Bither's notes. When Eddy subsequently sought to take Bither's deposition, Bither's counsel refused to allow Bither to testify because Wright had not executed a medical release.

[9] On June 16, 2017, Eddy filed an unverified motion for contempt and sanctions ("First Contempt Motion") in which Eddy alleged that Wright violated the trial court's July 30, 2015, order by failing to timely execute a medical release. On

July 3, 2017, Wright responded[4] that the trial court's order: (1) required her to sign a medical release for Bither's notes; (2) did not require her to sign a broad release for unlimited testimony; and (3) imposed no deposition obligation.

[10] At the close of a final pretrial conference ("FPTC") on July 10, 2017, Eddy supplied the trial court with a medical release form for Wright to sign. The trial court initialed the release and ordered Wright to sign it after the FPTC. Wright did not sign the release after the FPTC. Three days later, on July 13, 2017, Wright delivered to Eddy a signed, yet modified, version of the release that still bore the trial court judge's initials.[5]

[11] On July 14, 2017, the trial court, sua sponte, continued the trial for one year and ordered the parties into mediation to resolve all pending issues. On July 25, 2017, the trial court denied all pending motions stating, "[I]n the event mediation of the pending issues between the parties is unsuccessful, the parties may refile any requests they have." Appellants' App. Vol. X p. 143. After the trial court vacated the trial setting, Wright revoked her executed, modified medical release. The parties met for mediation as scheduled; however, they did

---

[4] Wright also argued that the Bither deposition did not occur because Eddy failed to obtain a medical release from Lance as Bither requested.

[5] Defendants maintain that Wright merely filled out the medical release consent form that Wright was given; that the form had a blank space for the service recipient's address, in which Wright entered her attorneys' contact information, and a blank space designated for the purpose for which the released information was to be used, in which Wright entered "that the release was solely for the purposes of allowing for Bither's deposition to be taken in this case, which was to be kept confidential pursuant to the trial court's protective order." *See* Appellants' Br. pp. 23-24. Wright also included a warning "that any violations of the protective order by Eddy and/or her agents would be 'prosecuted to the fullest extent of the law.'" *Id.*

not settle all pending matters. In the meantime, Eddy continued to try to obtain a signed release from Wright.

[12] After Defendants disclosed their expert witnesses, including Kleinrichert of FTI, Eddy served subpoenas on Defendants' experts on January 31, 2017. Defendants objected on February 13, 2017. The experts' responses to the subpoenas were due on March 6, 2017. On March 1, 2017, Defendants moved for a protective order to shield their experts, including FTI, from Eddy's subpoenas. On March 15, 2017, Eddy filed a motion to compel non-party discovery on Defendants' testifying experts, including Kleinrichert and FTI, and a motion for leave to serve non-party discovery upon the testifying experts.

[13] After a hearing on April 11, 2017, the trial court denied Defendants' motion for protective order, granted Eddy's motion to compel, and ordered Defendants' testifying expert witnesses to produce the requested documents by April 26, 2017 ("April 11, 2017 order"). FTI did not produce the documents on April 26, 2017. Instead, counsel for FTI notified Eddy, in writing, that the trial court's April 11, 2017 order did not require FTI to produce all responsive documents.

[14] On May 1, 2017, FTI provided 2,500 responsive documents to Defendants for review; however, Eddy contends that FTI produced only a subset of those responsive documents because Defendants prevented FTI from making a full production. On May 11, 2017, counsel for FTI conceded that Eddy was entitled to the withheld documents. On May 15, 2017, Defendants filed a motion to determine compliance with the trial court's April 11, 2017 order.

Defendants asked the trial court to find that BioC complied with the April 11, 2017 order and that the remaining documents were "appropriately withheld." *Id.* The trial court subsequently ordered that "all documents should be discovered," with limited exceptions for privileged, proprietary, and confidential information. Appellants' App. Vol. IX p. 165.

[15] On May 17, 2017, Eddy sought sanctions against Defendants for, among other things, improper interference with FTI's compliance with the April 11, 2017, order. In motions filed on July 7 and July 10, 2017, Eddy moved to exclude Kleinrichert's testimony, documents, opinions, or other evidence and moved to strike Kleinrichert and any documents produced by FTI from Defendants' witness and exhibit lists. Thereafter, on February 9, 2018, Defendants withdrew Kleinrichert as an expert witness. After mediation efforts failed, Defendants notified Eddy that the missing FTI documents would not be produced and stated that the documents were no longer relevant because Defendants had withdrawn Kleinrichert.

[16] On February 23, 2018, Eddy filed another unverified contempt motion for sanctions ("Second Contempt Motion"), which encompassed the Bither and FTI discovery disputes.[6] On May 3, 2018, the trial court conducted a hearing

---

[6] We refer to this contempt motion as the "Second Contempt Motion" to mirror the trial court's amended order. As to the Bither dispute, Eddy alleged that Wright and BioC improperly altered a court order by modifying the court-initialled Bither release and flouted the trial court's authority by subsequently revoking the release. As to the FTI dispute, Eddy alleged that Defendants improperly interfered with FTI's compliance with the trial court's April 11, 2017, order by failing to produce all responsive documents and by misrepresenting to the trial court that all responsive documents were produced. Eddy sought production of the omitted FTI documents, dismissal of Defendants' counterclaim, and fees.

on Eddy's Second Contempt Motion and other pending motions. The trial court's May 11, 2018, amended order provided, in relevant part:

> 2. Plaintiff's First Motion for Sanctions was a request for contempt because Ms. Wright refused to honor this Court's July 30, 2015, Order that Ms. Wright execute a Release so as to allow the deposition of Ms. Bither to occur.
>
> * * * * *
>
> 6. Instead of executing the Release as Ordered in Court, Ms. Wright refused to sign the release approved by the Court and instead, among other things, submitted a modified version despite the Release bearing the signature[7] of the Judge, effectively altering a Court Order.
>
> * * * * *
>
> 8. The Order continuing the trial date *did not* void all prior Orders of this Court, including the Order compelling Ms. Wright to sign the Release.
>
> 9. [ ] Wright is in contempt of this Court for [(i)] her failure to comply with this Court's July 2015, Order and June 27, 2[017], Order, (ii) for [Wright]'s improper modification of the initialed Release, and (iii) the continued and blatant discovery abuses well documented in this case in the record.
>
> * * * * *

---

[7] The release at issue bore the trial court judge's initials.

12. In this case, Ms. Wright has continued to flaunt [sic] this Court's authority by failing to comply with its Orders and her willful refusal to cooperate has caused delay in the parties['] completing discovery and preparing this matter for trial.

13. Ms. Wright has been held in contempt on a prior occasion where the Court ordered her to comply and took the matter of attorney fees as a sanction under advisement. This did not deter her.

14. As a result of Alisa Wright's contempt and the failure of other sanctions to force her to comply, the Court ORDERS judgment be entered against [ ]Wright, and for the Plaintiff, Kathryn Eddy on the Plaintiff's complaint and further orders [ ] Wright's counterclaim be dismissed with prejudice.

15. [BioC] is in contempt of this Court for its continuing failure to comply with the Court's Order requiring the production of missing FTI documents.

\* \* \* \* \*

17. As a result of the contempt and the failure of other sanctions to force [BioC] to comply, the Court ORDERS judgment be entered against [BioC], and for the Plaintiff, Kathryn Eddy on the Plaintiff's complaint and further orders [BioC]'s counterclaim be dismissed with prejudice. [ ]

Appellants' App. Vol. II pp. 85-88 (emphasis in original). Defendants appeal.

## Analysis

[17] Defendants argue that the trial court abused its discretion in dismissing their counterclaim with prejudice and entering default judgment in favor of Eddy as

discovery violation sanctions. "We assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion." *Whitaker v. Becker,* 960 N.E.2d 111, 115 (Ind. 2012). "Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation." *Id.* Accordingly, we review a trial court's sanction only for an abuse of its discretion. *Id.* An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and circumstances. *Clements v. Hall,* 966 N.E.2d 757, 759 (Ind. Ct. App. 2012), *trans. denied.*

## I. Due Process

[18] First, Defendants allege that the trial court improperly found them in indirect contempt based upon allegations in Eddy's unverified contempt motion and, thereby, denied them due process of law. Civil contempt consists of failing to do something that a court in a civil action has ordered to be done for the benefit of an opposing party. *Jones v. State*, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006) (citing *Cowart v. White*, 711 N.E.2d 523, 530 (Ind. 1999)). A party who has been injured or damaged by the failure of another to conform to a court order may seek a finding of contempt. *Cowart,* 711 N.E.2d at 530.

[19] "A court's inherent civil contempt powers are both coercive and remedial in nature." *S.W. ex rel. Wesolowski v. Kurtic,* 950 N.E.2d 19, 22 (Ind. Ct. App. 2011). In a civil contempt proceeding, the primary objective is not to punish,

but, rather, to coerce action or to compensate the aggrieved party. *Cowart*, 711 N.E.2d at 530. Whether a party is in contempt is left to the discretion of the trial court. *Id*. We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support the contempt finding. *Id*.

[20] Defendants contend, and we agree, that the trial court found willful disobedience of the court's orders, or indirect contempt, here. The trial court stated in its amended order that Defendants "fail[ed] to comply with [its] July 2015, Order, and June 27, 2017, Order[.]" There are two types of contempt—indirect and direct.[8] "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 737 (Ind. Ct. App. 2014); *see* Ind. Code § 34-47-3-1; *see also* Ind. Tr. R. 37(B)(2)(d) (providing that a party's failure to make or cooperate in discovery may be regarded as an act of indirect contempt).

[21] In cases of indirect contempt, it is well-settled that:

> [B]oth the Fourteenth Amendment and provisions of the Indiana
> Code demand certain procedural safeguards upon an allegation
> of "indirect" contempt . . . . The Fourteenth Amendment
> requires, as a baseline, that the accused receive notice of the

---

[8] Direct contempt involves "actions occurring near the court that interfere with the business of the court, and of which the judge has personal knowledge." *Reynolds v. Reynolds,* 64 N.E.3d 829, 832 (Ind. 2016), (citations omitted). "In cases of direct contempt, we accept as true the statement entered of record by the trial court; however, we examine the record to determine whether the acts recorded do, in fact, constitute contempt." *Hopping v. State*, 637 N.E.2d 1294, 1295 n.1 (Ind. 1994) (citation omitted); *see Holly v. State*, 681 N.E.2d 1176, 1178 (Ind. Ct. App. 1997) (affirming direct contempt finding where defendant directed profanity at trial court).

contempt allegations against him and have a reasonable opportunity to defend against those allegations through a fair, public hearing that affords the right to counsel and the chance to testify and call witnesses. In Indiana, before indirect contempt proceedings may commence, the trial court must receive a verified information that sets forth the facts alleged to constitute contempt. I.C. § 34-47-3-5. Once the trial court has received a verified information, the court may then initiate further proceedings by issuing a rule to show cause. . . . .

*Hunter v. State*, 102 N.E.3d 326, 330 n.3 (Ind. Ct. App. 2018) (citations omitted).

[22]     Indiana Code Section 34-47-3-5 provides:

(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:

(1) before answering the charge; or

(2) being punished for the contempt;

to be served with a rule of the court against which the contempt was alleged to have been committed.

(b) The rule to show cause must:

(1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;

(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

(c) The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.

(d) A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1) brought to the knowledge of the court by an information; and

(2) duly verified by the oath of affirmation of some officers of the court or other responsible person.

[23]    It is undisputed here that Eddy's various contempt motions were unverified. Defendants cite *Indiana Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 118 (Ind. Ct. App. App. 2009) ("*BMV*"), for the proposition that "an unverified petition cannot serve as a basis for indirect contempt."[9] Appellants' Br. p. 18.

---

[9] In *BMV*, after Charles' driver's license was suspended, she obtained a hardship license. At the time, the BMV required persons with hardship licenses to obtain high-risk insurance. The trial court waived the high-risk insurance requirement for Charles; however, BMV officials still required Charles to purchase high-risk insurance. Charles subsequently filed an unverified petition for rule to show cause that the BMV should be held in contempt for failing to honor the trial court's order. After a hearing, the trial court found the BMV to be in contempt and ordered the BMV to reimburse Charles. Due to a procedural issue, the trial court vacated its initial contempt order; however, the trial court subsequently found the BMV to be in contempt.

On appeal, we concluded that: (1) the trial court found the BMV to be in indirect contempt; and (2) an unverified petition cannot serve as a basis for a rule to show cause. In support, we cited Indiana Code Section 34-47-3-5(d)(2) for the proposition that "an indirect contempt order may not issue until the facts alleged to constitute contempt have been 'duly verified by the oath or affirmation of some officers of the court or other responsible person.'" *BMV*, 919 N.E.2d at 118 (quoting I.C. § 34-47-3-5(d)(2)). Our review of the record further established that neither party presented any witnesses, and the only admitted exhibit was a

We have previously held, however, that "not every technical requirement of the indirect contempt statute must be followed, so long as the contempt defendant's due process rights are respected." *In re Contempt of Wabash Valley Hosp., Inc.,* 827 N.E.2d 50, 63 (Ind. Ct. App. 2005).

[24] Indiana Trial Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

[25] In *Mariga v. Flint,* 822 N.E.2d 620, 632-33 (Ind. Ct. App. 2005), *trans. denied,* a panel of this court held that failure to properly caption and verify a contempt petition did not affect the substantial rights of the parties. *See In Re Paternity of J.T.I.,* 875 N.E.2d 447, 451 (Ind. Ct. App. 2007) ("Our courts have found . . . that strict compliance with the statute may be excused if 'it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or

---

BMV employee's affidavit alleging defective service. We found that, "[o]ther than the one exhibit, the transcript contain[ed] only argument from counsel . . . ." *Id.* at 117. We reversed and remanded, concluding that the trial court erred in making the contempt finding.

her[.]'"); *see also Reynolds v. Reynolds*, 64 N.E.3d 829, 833 (Ind. 2016) (citing *Stanke v. Swickard*, 43 N.E.3d 245, 249 (Ind. Ct. App. 2015) ("[D]ue process is only denied when neither a court order nor a motion for rule to show cause contain sufficient factual detail about the allegations of contempt. Here, Defendants allege no denial of notice or the opportunity to be heard. We do not find that Wright's substantial rights were affected by Eddy's failure to verify her Second Contempt Motion. Any error from Eddy's omission is harmless.

## II. *Discovery Violation Sanctions*

Next, we turn to Defendants' contentions that the trial court imposed excessive discovery violation sanctions. "Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation." *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012). Thus, we review a trial court's sanction only for an abuse of its discretion. *Id*.

As our Supreme Court has stated:

> *The purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery. Although concealment and gamesmanship were [once] accepted as part and parcel of the adversarial process, we have unanimously declared that such tactics no longer have any place in our system of justice.* Today, the purpose of pretrial discovery is to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.

In service of that goal, Indiana Trial Rule 37(B)(2)(c) expressly provides that a trial court may impose sanctions, including outright dismissal of the case or default judgment, if a party fails to comply with an order to compel discovery. As the U.S. Supreme Court has explained, the purpose of sanctioning discovery violations is not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 115 (emphasis added) (citations and quotations omitted).

[28] A trial court has inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with its conduct of business, and punish unseemly behavior. *Wright v. Miller*, 989 N.E.2d 324, 331 (Ind. 2013). Although discovery is designed to be self-executing, when the goals of the system break down, Trial Rule 37 provides the trial court with tools to enforce compliance. *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 399 (Ind. Ct. App. 1997).

[29] Trial Rule 37(B) provides:

(B) Failure to Comply with Order.

(2) *Sanctions by Court in Which Action is Pending.* If a party . . . fails to obey an order to provide or permit discovery. . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . .

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party*;

. . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Ind. Trial Rule 37 (emphasis added).

### A. Dismissal of Defendants' Counterclaim

[30] Defendants argue that the trial court abused its discretion by dismissing their counterclaim as a discovery violation sanction because the trial court did not expressly warn them that it was considering these sanctions; and the trial court's entry of dismissal was unjust.[10]

---

[10] Specifically, Defendants assert that: (1) "the trial court did not expressly warn [them] that failure to comply with any order might result in dismissal and/or default judgment"; (2) any court order that they violated was violated "based on reasonable, good-faith disputes regarding what was required"; (3) "[a] judgment of fraud, constructive fraud, securities fraud, and willful misconduct . . . may have far-reaching consequences . . . which significantly affect [Defendants'] business operations"; (4) the sanction order would impose liability upon Defendants for a securities fraud claim that Eddy previously withdrew and now seeks to resurrect based upon the sanction order; (5) Defendants have legitimate defenses to Eddy's claims, including Eddy's admissions, pursuant to Defendants' requests for admissions, that "directly contradict[ ]" Eddy's claims; and (6) the potential damages award to Eddy in excess of one million dollars would adversely impact BioC's business operations and "result in far greater losses."  Appellants' Br. pp. 37, 38, 40, 41.

. . .[W]hile the trial courts generally "fashion progressive sanctions leading up to a dismissal or default judgment when it is possible to do so, imposing intermediate sanctions is not obligatory when a party's behavior is particularly egregious." *Whitaker*, 960 N.E.2d at 116; . . . *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 649 (Ind. Ct. App. 2008) (quoting *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005), trans. not sought ) ("In determining whether a sanction is just, we recognize that '[a]lthough a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation, in Indiana there is a marked judicial deference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations.'" Additionally, we caution against an overly formulaic approach to determining when the behavior of a party or counsel warrants the drastic sanction of dismissal.

*Wright*, 989 N.E.2d at 327-28 (most internal citations and footnotes omitted).

[32]     "When deciding whether a sanction is just, this court has routinely considered whether [the] offending party was afforded time to comply and understood that sanctions could follow for continuing failure to perform." *Prime Mortg.*, 885 N.E.2d at 649 (affirming entry of default judgment as a discovery sanction where defendant repeatedly failed to comply with orders regarding discovery and submitted a false document to the court); *see id.* at 650 ("Indeed, we have held that a sanction is not unjust when two conditions are met: '(1) the party in

question was given additional time within which to respond and was expressly warned in advance that an ultimate sanction would be entered if he failed to comply, and (2) no response or request for additional time was timely made and no reason excusing a timely response is demonstrated.'").

[33] It is well settled that a trial court may dismiss a matter outright (1) where a party fails to timely respond to discovery; (2) where a party violated the trial court's order compelling discovery by failing to respond; or (3) where a party responded to discovery in an incomplete or misleading way. *BMV,* 919 N.E.2d at 116. Rule 41(E) allows for dismissal for failure to comply with the trial rules, which include the discovery rules.

[34] As to the Bither deposition, the record here establishes that the trial court ordered Defendants to execute a medical release no less than three times; Defendants repeatedly showed disdain for the court's authority; Defendants were undeterred by monetary sanctions; Defendants persisted in parsing the language of the trial court's orders and debating *if* any of the trial court's unequivocal orders regarding the Bither deposition *actually* ordered Defendants to comply; and, despite the trial court giving Wright numerous occasions to comply, the Bither deposition still had not occurred at the time of the hearing on Eddy's Second Contempt Motion.[11]

---

[11]We will not dignify Wright's contention that Eddy and the trial court somehow failed to realize that Wright tendered a complying release nearly three years earlier. By this ruse, Defendants illustrated better than Eddy could the extent to which Defendants' brinksmanship knows no bounds.

[35]     As to the FTI document production, the record establishes the following: (1) the trial court compelled Defendants to produce all documents responsive to Eddy's FTI subpoena; (2) FTI provided Defendants with all responsive documents; (3) Defendants produced only a subset of the responsive FTI documents; (4) the trial court entered a second order compelling Defendants to produce all documents, except privileged documents, and found Defendants to be in contempt; (5) Defendants later represented, falsely, that all responsive FTI documents had been produced; and (6) counsel for Defendants subsequently notified FTI, in writing, that Defendants would not authorize FTI's full compliance with the court's order. Wright and BioC, thus, interfered with FTI's compliance with the trial court's order. Faced with Defendants' blatant disregard of the trial court's authority, and Wright's sabotaging of multiple scheduled Bither depositions, and Defendants' interference with FTI's compliance with court orders, we find no abuse of discretion in the trial court's dismissal of Defendants' counterclaim as a discovery violation sanction.

### 2. Entry of Default Judgment in Eddy's Favor

[36]     Next, we address the trial court's entry of default judgment in favor of Eddy as a discovery violation sanction for Defendants' conduct of discovery. A trial court may enter default judgment (1) where a party fails to timely respond to discovery; (2) where a party violated the trial court's order compelling discovery by failing to respond; or (3) where a party responded to discovery in an incomplete or misleading way. *BMV,* 919 N.E.2d at 116; *see* Ind. R. 55 ("When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted by the court.").

[37] At issue here is not whether the trial court impermissibly entered default judgment as a discovery sanction pursuant to authority granted by Trial Rule 37(B) but, rather, whether doing so was unjust.

> In determining the appropriateness of default judgment as a discovery sanction, there is a marked preference in Indiana for deciding disputes on their merits, "'especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations.'" *Wright v. Miller*, 989 N.E.2d 324, 328 (Ind. 2013) (quoting *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005)). Courts should not apply an "overly formulaic approach" in deciding whether to impose the "drastic sanction" of default judgment in the case of a discovery violation. If possible, trial courts should impose sanctions that have a minimal effect on the evidence presented at trial and should not impose sanctions at all if the circumstances indicate that sanctions would be unjust. We presume that a trial court will act in accord with what is fair and equitable in each case.

*Nagel v. Northern Indiana Public Service Co.*, 26 N.E.3d 30 39-40 (Ind. Ct. App. 2015) (internal citations omitted).

[38] While we understand the trial court's exasperation with Defendants' discovery abuses, given well-settled Indiana authority, we nevertheless must take issue with its entry of the "drastic" default judgment sanction here inasmuch as the instant case involves (1) material issues of fact, (2) substantial amounts of money, and (3) "weighty policy determinations" and, therefore, is among the

cases that Indiana courts favor deciding on their merits. *See id.*; *see also Wright,* 989 N.E.2d at 328.

[39] We initially note that Eddy did not request entry of default judgment as relief in her Second Contempt Motion. Moreover, we find persuasive Defendants' contentions that the trial court's entry of default judgment: (1) "entered judgment on claims for fraud, constructive fraud, securities fraud, and willful misconduct which may have serious consequences for BioC and [Wright]'s business operations"; (2) "impose[d] liability on [Defendants] for a [securities] claim that Eddy previously withdrew"; (3) "prevented [Defendants] from advancing their . . . legitimate defenses to Eddy's claims"; and (4) pose[ ] "potential harm to BioC's business operations" as the judgment could result in significant financial losses. Appellants' Br. pp. 38, 39, 41. Further, the record does not support a finding that Defendants were expressly warned in advance that an ultimate sanction of default judgment would be entered if they failed to comply. *See Prime Mortg.*, 885 N.E.2d at 650.

[40] For these reasons, we deem the trial court's entry of default judgment to be an unjust sanction as applied in this case; and we find that the trial court abused its discretion in imposing that "drastic sanction." *See Nagel*, 26 N.E.3d at 39-40 ("If possible, trial courts should impose sanctions that have a minimal effect on the evidence presented at trial and should not impose sanctions at all if the circumstances indicate that sanctions would be unjust.").

# Conclusion

[41] Despite the fact the contempt motion was unverified, Defendants were not denied due process. The trial court did not abuse its discretion in dismissing Defendants' counterclaim as a discovery violation sanction but did abuse its discretion in entering default judgment. We affirm in part and reverse in part.

[42] Affirmed in part and reversed in part.

Baker, J., and Bradford, J., concur.