## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2020, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Kelly A. Lonnberg
Stoll Keenon Ogden, PLLC
Evansville, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

In Re the Marriage of:

Jeffrey E. Nelson,

*Appellant/Cross-Appellee-Respondent,*

v.

Julie A. Nelson,

*Appellee/Cross-Appellant-Petitioner.*

July 6, 2020

Court of Appeals Case No.
19A-DR-2642

Appeal from the Vanderburgh Superior Court

The Honorable J. Zach Winsett, Special Judge

Trial Court Cause No.
82D01-1601-DR-32

**Najam, Judge.**

# Statement of the Case

Jeffrey Nelson ("Husband") appeals the dissolution court's final decree dissolving his marriage to Julie Nelson ("Wife"). Husband presents three issues for our review:

1. Whether the dissolution court abused its discretion when it excluded his expert witnesses' testimony.

2. Whether the dissolution court abused its discretion when it divided the marital estate.

3. Whether the dissolution court erred when it did not award Husband a setoff against Wife's share of the marital estate.

Wife cross-appeals and requests attorney's fees.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

This is the sixth appeal in this contentious dissolution action between Husband and Wife, who were married for four years and have been litigating their dissolution for just as long. In a prior appeal, where Husband appealed the court's order finding him in contempt, this Court set out the relevant foundational facts and procedural history as follows:

> Husband and Wife married in Illinois on April 28, 2012. The day before their marriage, the parties executed a prenuptial agreement. On January 8, 2016, Wife filed a verified petition for dissolution of marriage as well as a motion for provisional order. Following a hearing, the trial court entered a provisional order

that provided in relevant part that, during the pendency of the dissolution proceedings, Husband was to pay Wife's monthly rent payments plus $2500 per month in spousal maintenance. Husband was also ordered to pay $20,000 in both current and prospective attorney's fees to Wife's counsel. Husband was granted temporary possession of the marital residence and was responsible for all debts and expenses associated therewith.

Thereafter, Wife filed various motions and petitions requesting the trial court to interpret the parties' prenuptial agreement and seeking other provisional relief, including additional attorney's fees. Accordingly, the trial court has held multiple hearings and entered multiple provisional orders. Husband appealed each of those orders, and different panels of this Court have issued memorandum decisions on the narrow issues presented therein. *See Nelson v. Nelson*, No. 18A-DR-248, 2018 WL 4403437 (Ind. Ct. App. Sept. 12, 2018) [("*Nelson III*")]; *Nelson v. Nelson*, No. 18A-DR-794, 2018 WL 4003368 (Ind. Ct. App. Aug. 9, 2018) [("*Nelson II*")]; *Nelson v. Nelson*, No. 82A01-1607-DR-1706, 2017 WL 765900 (Ind. Ct. App. Feb. 28, 2017) [("*Nelson I*")].

*Nelson v. Nelson*, No. 18A-DR-1577, 2019 WL 386414, at *1 (Ind. Ct. App. Jan. 31, 2019) ("*Nelson IV*").

[5] At the final evidentiary hearing on Wife's dissolution petition, which occurred over the course of six days beginning in November 2018 and concluded on July 12, 2019, Wife testified and presented evidence, including expert testimony regarding the parties' oil interests and the valuation thereof. Husband did not testify. And when Husband offered expert testimony regarding his oil interests, the trial court found that Husband's witness did not qualify as an expert and excluded his testimony. On July 11, one day before the final day of the hearing,

Husband notified Wife that he intended to call two previously unidentified expert witnesses, Terry White and Mr. Schmitt,[1] to testify at the hearing on July 12. Due to the late notice, Wife objected to the witnesses' testimony, and the dissolution court excluded them.

[6] In its final decree, the dissolution court stated in relevant part as follows:

> 6. Certain real and personal property was accumulated as a result of the marriage, which should be divided equitably by the court.
>
> 7. There exists a valid prenuptial agreement which contains "Schedule A" and "Schedule [B]" which outlines the property of the parties at the time of marriage. The prenuptial agreement is attached to this order (Husband's Exhibit A of 1/16/2019).
>
> 8. The following property is non-marital in nature, and shall be awarded to the Husband, free and clear from any claim from the Wife:
>
>> a. Each and every item of property listed in Schedule A of the prenuptial agreement;
>>
>> b. Any property owned individually by Husband prior to the date of marriage pursuant to the prenuptial agreement.
>
> 9. The following property is non-marital in nature, and shall be awarded to the Wife, free and clear from any claim from the Husband:

---

[1] The record does not reveal Mr. Schmitt's first name.

a. Any property owned individually by [Wife] prior to the date of marriage pursuant to the prenuptial agreement.

10. The following property is marital property, and subject to division:

a. Real Estate and Residence located at 1000 Oak Trace, Evansville, Indiana;

b. Real Estate located at 1220 Hillsdale Rd., Evansville, Indiana;

c. Certain furniture/personal property items;

d. Personal Vehicles of the parties obtained during the marriage;

e. Certain Oil interests;

f. First Federal Bank Accts ending 9197, 3687.

g. Regions Bank Accts ending 2644, 9459, 2792.

11. All other property not specifically listed in this order is non-marital property.

12. The court initially presumes that an equal division of marital property between the parties is just and reasonable, and the prenuptial agreement requires an equal division of marital property between the parties.

13. The Wife shall be the sole, exclusive owner of the real estate and residence located at 1000 Oak Trace, Evansville, Indiana, free and clear from any claim from the Husband. This property is valued by the court at $370,000.00.

14. The Husband shall be the sole, exclusive owner of the real estate located at 1220 Hillsdale Rd, Evansville, Indiana, subject to certain amounts that the Husband owes to the Wife and others. This property is valued by the court at $247,000.00.

15. The court orders that the Husband shall be the sole and exclusive owner of First Federal and Regions Bank accounts as referenced below, free and clear from any claim from the Wife. The following joint bank accounts were in existence at the time of the filing of the dissolution, and the Court designates the following values to each account:

 a. Regions Bank Acct. No. ending 2644 $3,236.94

 b. First Federal Bank Acct. No. ending 9197 $26,800.18

 c. Regions Bank Acct. No. ending 3687 $200.01

 d. First Federal Bank Acct. No. ending 9459 $19,803.36

 e. Regions Bank Acct. No. ending 2792 $83.93

 f. TOTAL BANK ACCOUNTS $50,124.42

16. The Wife is awarded, and therefore credited for purposes of asset allocation, $2000.00 from the bank accounts listed in the preceding paragraph. She withdrew $2000.00 from these accounts at or near the time of filing of the petition for dissolution. The Husband is awarded, and therefore credited for purposes of asset allocation, $48,124.42 from these bank accounts, which represents the remainder of the bank account values after deducting the Wife's $2000.00 withdraw[al].

17. The Husband shall have sole, exclusive possession and ownership of the "Morris Lease" oil lease. The Wife shall have

no rights, ownership, or responsibilities associated with the "Morris Lease". The Wife shall not be responsible for any fines, fees, or any other costs associated with the "Morris Lease".

18. The Husband shall have the sole, exclusive possession and ownership of the following items [of] personal property free and clear from any claim from the Wife, and the court assigns the personal property the following values:

    a. 2007 Mercedes CL550 $45,200
    b. 2007 Mercedes CLK550 $10,000
    c. 2014 Ford 250 Super Duty $54,594
    d. Kubota Tractor $30,228
    e. Wright Motor Car $20,509
    f. Horchow Loveseats $8,898

* * *

    x. Total Personal Property HUSBAND $205,369.00

19. The Wife shall have the sole exclusive possession and ownership of the following items of personal property, free and clear from any claim from the Husband, and the court assigns the personal property the following values:

* * *

    c. Leather Sofas, Old Hickory Tanner (at 700 Reserve) $4,000.00

* * *

    h. All other personal property remaining in the Home $18,263.00

    i. Total Personal Property WIFE $54,588.00

* * *

21. The Husband Shall be the sole owner of the following oil related assets, free and clear from any claim from the Wife, and the court considers these assets marital property, and assigns the following values to each:

    a. Armstrong Spore $129.00
    b. Armstrong Unit $233.00
    c. Braselton-Armstrong Unit $28.00
    d. Creamer Tract 10 $3,555.00
    e. Darrell O Garrett Lease $40.00
    f. Carl V Hardiman $1.00
    g. Elmer Thompson Lease $28.00
    h. FH Ackerman#1 Lease $1,072.00
    i. Flora Clark Unit $5.00
    j. JH Spore $40.00
    k. Knowles Unit $123.00
    l. Leo W. Dyball Lease $23.00
    m. Luther Armstrong Lease $13.00
    n. MA Knowles Lease $155.00
    o. Mae Mauck Lease $18.00
    p. Marvel Braselton Unit $53.00
    q. Morris Lease $0.00
    r. Moser-Spore Unit $20.00
    s. North Owensville Pooled Leases $721.00
    t. Robb Unit $979.00
    u. Rosa Braselton Heris $1,363.00
    v. Rosa G Braselton $20.00
    w. Sharon Bolinn Stoltz et al Lease $49.00
    x. Wagner Consolidated $83,555.00
    y. William Marvel $692.00
    z. Total Oil Related Assets allocated to HUSBAND $92,915.00

* * *

27.  Except as otherwise specifically stated in this order, each respective party shall be solely responsible for his or her own attorney's fees.

Appellant's App. Vol. 3 at 4-9.  This appeal ensued.

# Discussion and Decision

## *Issue One:  Expert Witnesses*

Husband first contends that the dissolution court abused its discretion when it excluded two expert witnesses from testifying at the final hearing.  Again, Husband first notified Wife of his intent to present testimony from White and Schmitt the day before the final day of the hearing.  Wife objected to the experts' testimony because Husband had a duty under Trial Rule 26(E)(1)(b) to supplement his response to an interrogatory asking Husband to identify "each expert" witness he expected to call.  Appellee's App. Vol. 2 at 8.  Wife asked that the dissolution court exercise its discretion under Trial Rule 37 to exclude White's and Schmitt's testimony as a sanction for the late notice to Wife, which the court did.

As our Supreme Court has stated,

> Trial Rule 37 provides broad latitude for the trial court to impose sanctions to ensure cooperative discovery, and thus encompasses remedies which may be sought by or imposed against either party. See Ind. Trial Rule 37 ("Failure to make or cooperate in discovery: Sanctions").  Trial Rule 37(B) permits the trial court to "make such orders . . . as are just," including "treating as a contempt of court the failure to obey," "prohibiting [the disobedient party] from introducing designated matters into

evidence," "dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party" when that party "fails to obey an order to provide or permit discovery." T.R. 37(B).

*Wright v. Miller*, 989 N.E.2d 324, 327 (Ind. 2013). When challenged on appeal, trial court sanctions for failure to comply with court orders are reviewed for an abuse of discretion. *Id.* at 330. We presume that the trial court will act in accord with what is fair and equitable in each case, and thus we will only reverse if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Id.* The conduct and equities will vary with each case, and we thus generally leave that determination to the sound discretion of the trial courts. *Id.*

[9] On appeal, Husband asserts that "he could not have recognized his need for rebuttal expert witnesses until [Wife's expert] Mr. Pope testified during the June 25, 2019 hearing and it became known to Husband that Mr. Pope's calculations were clearly wrong" and that it was "unreasonably difficult for Husband to retain an expert witness" during "the short timeframe of seventeen days between the June 25, 2019 hearing . . . and the July 12, 2019 hearing[.]" Appellant's Br. at 36. And Husband maintains that the late notice "did not place any harm on Wife." *Id.* In his offer of proof to the dissolution court, Husband argued that White would have testified that Wife's expert testimony regarding the valuation of the parties' oil interests was "inaccurate in a way that harmed [Husband]" in "overvalu[ing] any asset that was deemed a marital

asset[.]" Tr. Vol. 4 at 70. And Husband argued that Schmitt would testify regarding Husband's income and the sources thereof.

[10] Again, Husband did not testify at the final hearing. That he did not anticipate needing to call his own witnesses to testify regarding his oil interests and his income until after Pope testified on June 25 is baffling. While Husband may have had difficulty finding another expert witness between June 25 and July 11, Husband's suggestion that he had no idea prior to June 25 of a need to rebut Wife's expert witness is not well taken. Moreover, as we stated in *Nelson IV*, "our review of the record reveals that Husband has repeatedly interrupted, obstructed, embarrassed, and prevented the due administration of justice in these dissolution proceedings." 2019 WL 386414, at *4. In light of Husband's conduct, we cannot say that the dissolution court abused its discretion when it excluded White's and Schmitt's testimony at the final hearing.

### Issue Two: Division of Marital Estate

[11] Husband next contends that the dissolution court abused its discretion when it divided the marital estate. Dissolution actions invoke the inherent equitable and discretionary authority of our trial courts, and, as such, we review their decisions with "substantial deference." *See, e.g.*, *R.W. v. M.D. (In re Visitation of L-A.D.W.)*, 38 N.E.3d 993, 998 (Ind. 2015). Further,

> [w]hen reviewing valuation decisions of trial courts in dissolution actions, [our] standard of review [is as follows]: that the trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary*, 582 N.E.2d 851, 852

(Ind. Ct. App. 1991). The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* In other words, we will not reverse the trial court unless the decision is clearly against the logic and effect of the facts and circumstances before it. *Porter v. Porter*, 526 N.E.2d 219, 222 (Ind. Ct. App. 1988), *trans. denied.* A reviewing court will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Skinner v. Skinner*, 644 N.E.2d 141, 143 (Ind. Ct. App. 1994).

*Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996).

[12] Initially, again, we note that Husband did not testify at the dissolution hearing, and, in support of his arguments on appeal, he largely relies on evidence introduced by Wife. Further, our consideration of Husband's contentions on appeal is hindered by his failure to direct us to the relevant portions of the transcript demonstrating that he made certain arguments to the dissolution court to preserve issues for appeal. Despite these deficiencies, we address Husband's five separate challenges to the dissolution court's division of the marital estate.

### No Findings and Conclusions

[13] Husband first contends that the dissolution court erred when it did not make findings and conclusions in support of the final decree pursuant to an Illinois statute. Husband acknowledges that neither party requested findings and conclusions. However, Husband asserts that, because the parties agreed that Illinois law would govern their prenuptial agreement, the dissolution court was

required to make certain findings and conclusions under Illinois law. We cannot agree.

As Wife correctly points out, while Illinois law governs the substantive law in these proceedings, Indiana law governs procedural issues. *See JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945, 950 (Ind. Ct. App. 1992) (stating that a contract provision that an agreement is to be governed by the law of another state operates only to import the substantive law of that state; the procedural law of the forum state applies to procedural issues), *trans. denied*. Whether a trial court is required to enter findings and conclusions in a dissolution decree is a matter of procedure, not substance. *See id.* ("Laws which fix duties, establish rights and responsibilities among and for persons, natural or otherwise, are substantive in character, while those which merely prescribe the manner in which such rights and responsibilities may be exercised and enforced in a court are procedural"). And, in Indiana, dissolution courts are not required to *sua sponte* enter findings and conclusions in a dissolution proceeding. As such, Husband's contention on this issue is without merit.

*Personal Property Other Than Oil Leases*

Husband next contends that the dissolution court abused its discretion when it included certain personal property in the marital estate and assigned values to that property. In particular, Husband asserts that: two vehicles included in the marital estate were not owned by him at the time Wife filed the dissolution petition, namely, a Mercedes CL550 and a Ford truck, and they should have been considered nonmarital property; the dissolution court's assigned values to

those two vehicles were not supported by the evidence; a Kubota tractor included in the marital estate was not marital property; and the Horchow loveseats awarded to Husband are duplicative of the leather sofas awarded to Wife.

[16] First, as to Husband's argument that the two vehicles were not marital property, Husband's daughter testified at the hearing that, while the two vehicles were in her name at the time the dissolution petition was filed, she later sold the vehicles and gave the proceeds to Husband. Thus, as Wife points out, the dissolution court was entitled to consider the transfer of those vehicles to Husband's daughter to be a sham transfer. Moreover, the dissolution court was entitled to find Husband's daughter's testimony on the ownership of the vehicles not credible. And Wife presented evidence to support the court's valuation of the vehicles.

[17] Second, Wife presented evidence that the Kubota tractor was a marital asset, and Husband does not direct us to any evidence in the record to dispute that evidence. To the extent Husband relies on Wife's attorney's summary of his deposition testimony, that is not evidence.

[18] Third, Husband does not direct us to any evidence to show that the "Horchow loveseats" awarded to Husband are the same as the "Leather Sofas" awarded to Wife. In sum, Husband asks that we reweigh the evidence, which we cannot do. Husband's contentions on these items of personal property are without merit.

*Real Property*

Husband contends that the dissolution court erred when it valued the parties' real properties located at 1000 Oak Trace and 1220 Hillsdale. But Husband ignores the evidence that those properties were worth $370,000 and $247,000, respectively. In particular, Commissioner Charles Berger's report to the court dated July 29, 2019, states that 1000 Oak Trace was appraised at $370,000. And Berger testified to the dissolution court that the parties had received an offer to purchase 1220 Hillsdale for $247,000. Again, Husband asks that we reweigh the evidence, which we cannot do.

*Bank Accounts*

Husband contends that the dissolution court abused its discretion when it included several bank accounts in the marital estate that should have been excluded as the parties' separate property under the prenuptial agreement. However, Wife's Exhibit 1, which the trial court admitted without objection from Husband, largely supports the dissolution court's distribution and valuation of the parties' joint bank accounts. As Wife points out, the court's order is supported by the evidence but for a few scrivener's errors: the account identified as Regions Bank account 3687 and valued at $200.01 is actually a First Federal Savings Bank account with that same account number and value; and the account identified as First Federal Savings Bank account 9459 and valued at $19,803.36 is actually a Regions Bank account with the same account number and value.

[21] Wife also points out that the dissolution court "mistakenly referred to Regions Account #0234 as Account #2644." Appellee's Br. at 22. Wife presented evidence that Regions Bank account number 0234 had a value of $3,236.94 and belonged to Husband and his daughter. In the final decree, the dissolution court identified Regions Bank account number 2644 as a joint account worth $3,236.94. Wife avers that, while Regions Bank account number 2644 was her individual account and, thus, non-marital property, Regions Bank account number 0234 "is a joint account and must be viewed as marital." *Id.* But the undisputed evidence presented to the dissolution court shows that Regions Bank account number 0234 was *not* a joint account. Accordingly, Husband is correct that the dissolution court erred when it included Regions Bank account number 0234 in the marital estate. We remand to the dissolution court to correct the errors listed above, which will require a recalculation of the marital estate to exclude from the marital pot and the distributions to Husband the $3,236.94 in the Regions Bank account number 0234 and a recalculation of the fifty-fifty division of the estate between the parties.

*Oil Leases*

[22] Husband contends that the dissolution court abused its discretion when it identified as marital assets certain oil leases. In particular, Husband maintains that the oil leases identified in paragraph 21 of the decree as marital assets and awarded to Husband should have been excluded from the marital estate under the prenuptial agreement. We cannot agree.

[23]     First, with respect to the Morris Lease, which the court valued at $0 and awarded to Husband, Husband directs us to evidence that he had gifted the Morris Lease to Wife in 2014. And Husband asserts that, under the prenuptial agreement, gifts should be treated as nonmarital property. However, as Husband points out, in *Nelson I*, he asked this Court to interpret Section 3 of the prenuptial agreement regarding inter-spousal gifts. We observed that

> Section 3 of the Agreement . . . states that "any property . . . which is given to the spouse by retitling in the other spouse's name or in the joint name of the parties . . . during the period of their marriage" is marital property. Appellant's App. at 56. Accordingly, we find that, under the express terms of the Agreement, gifts may be made from one spouse to the other during marriage, and such gifts may be, *but are not necessarily*, the separate property of the recipient spouse.

*Nelson I*, 2017 WL 765900, at *8 (emphasis added). We cannot say that the dissolution court abused its discretion when it found that the Morris Lease was a marital asset. Further, to the extent Husband contends that the court abused its discretion when it awarded the Morris Lease to Husband rather than to Wife, Husband does not support that contention with cogent argument.

[24]     Second, Husband contends that the dissolution court abused its discretion when it identified the Wagner Consolidated Lease as a marital asset because in 2013 it "was transferred by a Quit Claim Deed . . . to the Nelson Family Trust," of which Husband's mother was the beneficiary. Appellant's Br. at 33. However, Husband ignores Wife's expert's testimony that the quit claim deed only transferred some or all of the mineral interests in the Wagner Consolidated

Lease but did not transfer ownership of the lease itself. And Wife's expert examined production records showing income to Husband from the Wagner Consolidated Lease throughout the marriage, past the date of the quit claim mineral deed.

[25] Finally, with respect to the other oil leases identified in paragraph 21 of the decree as marital assets, Husband does not direct us to any argument to the dissolution court or evidence in support thereof that those oil leases were not marital assets.[2] Husband cannot now complain. *See, e.g.*, *Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014) (holding party waived claim for failing "to show any effort to present his request to the trial court in the first instance as the Appellate Rules require.") Further, Wife's expert identified the oil leases as marital assets and presented evidence of their respective values. Neither Schedule A of the parties' prenuptial agreement, which lists several oil leases to be excluded from the marital estate, nor Husband's subsequent discovery responses indicate that any of the oil leases identified in paragraph 21 as marital assets were, in fact, non-marital assets. Indeed, in his offer of proof when the dissolution court excluded White's testimony at the conclusion of the hearing, Husband stated that White would have presented evidence that conflicted with Wife's expert's valuations of the oil leases, but he did not dispute that the listed

---

[2] Husband cites to Wife's Exhibit 8, which includes "payment histories" relevant to the listed oil leases. Husband asserts "that the payments to Husband clearly predated the parties' marriage" in 2012. Appellant's Br. at 31. But Husband did not argue to the dissolution court that the payment histories prove that the oil leases identified in paragraph 21 of the decree are non-marital assets, and, in any event, Husband does not explain on appeal how the payment histories are definitive proof on this issue.

oil leases were marital property. For all of these reasons, Husband has failed to show that the dissolution court erred when it identified these oil leases as marital assets.

### *Issue Three: Setoff*

[26] Finally, Husband contends that the dissolution court abused its discretion when it denied him a setoff against Wife's share of the marital estate. Husband maintains that, pursuant to the parties' prenuptial agreement, he is entitled to a setoff for paying off the mortgage on the home owned by Wife when they got married, as well as various expenses he paid on Wife's behalf during the pendency of the dissolution. However, while Husband submitted his Exhibit O to the dissolution court, which his attorney described as "a summary exhibit of items that [he] is requesting setoff for," Husband does not direct us to any argument to the dissolution court in support of the requested setoff. Tr. Vol. 4 at 73-74.

[27] Without any indication that Husband argued to the dissolution court the reasons why he is entitled to the setoff as claimed in his Exhibit O, we cannot say that the court abused its discretion when it denied Husband a setoff. *See, e.g.*, *Zavodnik*, 17 N.E.3d at 264. As Husband points out, both the dissolution court and this Court in a prior appeal acknowledged Husband's right to "*argue* for a setoff*" at the final hearing. Appellant's Br. at 39 (citing *Nelson III*, 2018 WL 4403437, at *3) (emphasis added). But without any indication that Husband made such an argument to the dissolution court, Husband has not shown an abuse of discretion.

# Cross-Appeal

[28] In her cross-appeal, Wife requests that we order Husband to pay "the entirety of Wife's attorneys' fees." Appellee's Br. at 46. In support, Wife cites the following provision in the parties' prenuptial agreement: "Attorney Fees. Should either party retain counsel to enforce or prevent the breach of any provision of this Agreement, that party shall be entitled to reasonable attorney fees and costs for services rendered if such party prevails." Appellant's App. Vol. 3 at 17. Wife maintains that Husband's dilatory tactics throughout these proceedings caused her to incur attorney's fees that would have been less had "Husband complied with the parties' Prenuptial Agreement and court orders[.]" Appellee's Br. at 45. Wife asserts that, because she has only "sought the enforcement and application of the Prenuptial Agreement" during these proceedings, and because the court ultimately enforced the prenuptial agreement when it divided the marital estate equally, she is the "prevailing party" in this litigation and entitled to attorney's fees. *Id.* at 46.

[29] However, Wife does not cite any case law in support of her broad assertion that she is the "prevailing party" under the terms of the prenuptial agreement to support an award of *all* of her attorney's fees. And under Illinois law, "[w]hen a dispute involves multiple claims, and both parties have won and lost on different claims, it is appropriate to find that neither party is the prevailing party and that an award of attorney fees to either would be inappropriate." *Linta v. Linta* (*In re Linta*), 18 N.E.3d 566, 571 (Ill. App. Ct. 2014). Here, Wife ignores the fact that Husband prevailed or partially prevailed in three of his prior

appeals. Thus, Wife's contention that she is entitled to have Husband pay *all* of her attorney's fees, without even an attempt to break out those sums expended in the course of the appeals where Husband prevailed is not well taken. Wife has not shown that she is entitled to "the entirety" of her attorney's fees over the course of this litigation. Appellee's Br. at 46. Moreover, Wife makes no contention that the dissolution court abused its discretion when it ordered that, with a few exceptions delineated in the decree, "each respective party shall be solely responsible for his or her own attorney's fees." Appellant's App. Vol. 3 at 9.

### Conclusion

[30] Husband has not satisfied his burden on appeal to show that the dissolution court abused its discretion when it excluded his expert witness testimony. And, other than one bank account erroneously included in the marital estate, Husband has not shown that the dissolution court abused its discretion when it divided the marital estate. Husband has waived his contention that the dissolution court abused its discretion when it denied his request for a setoff against Wife's share of the marital estate.

[31] As Wife points out, the dissolution decree contains some scrivener's errors and erroneously includes a small non-marital bank account. We remand and instruct the court to correct the subheadings in paragraph 15 of the dissolution decree to read as follows:

a. First Federal Bank Acct. No. ending 9197 $26,800.18
b. First Federal Bank Acct. No. ending 3687 $200.00

c. Regions Bank Acct. No. ending 9459 $19,803.36
d. Regions Bank Acct. No. ending 2792 $83.93
e. TOTAL BANK ACCOUNTS $46,887.47

Accordingly, the dissolution court shall recalculate the marital estate to exclude the $3,236.94 in Regions Bank account number 0234, which was erroneously included as Regions Bank account number 2644 and is not a marital asset. And the court shall redistribute the marital assets to achieve the desired equal division.

Affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J., and Brown, J., concur.